*507 OPINION OF THE COURT
Robert E. Fischer, J.
In this petition for a writ of habeas corpus, relator seeks discharge from his detention by the Broome County Sheriff who holds him for extradition to the State of Utah pursuant to the requirement of the Governor of the State of New York.
The underlying facts are not in dispute.
On December 14, 1978, a warrant was executed by the Honorable Floyd H. Gowans, Judge of the Circuit Court of the State of Utah (Salt Lake County, Salt Lake Department) commanding the arrest of relator for the offense of forgery, based upon the complaint of one Jerry M. Campbell.[1] Bail was set in the amount of $1,500. (State v Coster Case No. 78 CRS 1059.)
The complaint, sworn to December 14, 1978, and executed by Mr. Campbell on information and belief, recites the criminal accusation—
"forgery, a second degree felony, at 2005 South 300 West, on or about December 10, 1978, in violation of Title 76, Chapter 6, Section 501, Utah Code Annotated, 1953, as amended, in that defendant Robert marión caster, uttered a check in the face amount of $100.00 or more so that said check purported to be the act of Joe Linford, with a purpose to defraud;
"probable cause statement:
"Defendant was observed to endorse a check made payable to Joe Linford, and then present it for cash. An employee of victim cashed the check and gave defendant $150.00. Joe Linford, for whom the check was written, advised complaining witness that defendant had no right or authority to cash check or sign his name.”
On January 15, 1979, a bench warrant was issued for relator’s arrest by the Honorable Eleanor S. Lewis, Judge of the Utah Circuit Court, the warrant indicating that relator failed to appear on January 8, 1979, for a "preliminary.” Bail was set in the amount of $5,000.
Relator was arrested in the Town of Vestal, Broome County, New York, on February 27, 1980, pursuant to a teletype received from the Salt Lake City Sheriffs office reciting arrest *508 warrants for the crimes of forgery,[2] bail jumping and burglary of a motor vehicle. After initial arraignment as a fugitive before the Vestal Town Justice, relator was arraigned on February 29, 1980, in Broonie County Court on a fugitive complaint filed by a Town pif Vestal police officer. Having declined to waive extradition, relator was remanded pending extradition proceedings.
On March 3, 1980, the Salt Lake County Attorney applied to the Governor of Utah for a requisition upon the Governor of New York for the return of relator, submitting the original felony complaint and arrest warrant; an additional affidavit of Police Officer Campbell, sworn to March 4, 1980, which recited that relator was "present in Salt Lake County, State, of Utah” when the crime of forgery[3] was committed; a statement that the fugitive relator was currently in Binghamton, New York; and a further statement that the requisition sought was not for the purpose of enforcing the collection of any debt or for any other private purpose.
On March 14, 1980, Governor Scott M. Matheson of Utah requested the Governor of New York State to apprehend relator and deliver him to Utah authorities, resulting in a requisition by New York Governor Hugh L. Carey on April 4, 1980, directing the Broome County Sheriff to arrest, secure and thereafter deliver relator to Utah officials after compliance with the Uniform Criminal Extradition Act (CPL art 570).
We executed the present writ on April 25, 1980, and a hearing was held to consider delator’s claim on the adjourned date of May 7, 1980.
As a preface to our consideration of the legal issues, we observe generally that there ip no separate State law where extradition is concerned and wie are bound by the mandate of *509 the United States Constitution[4] as interpreted by the United States Supreme Court. Such is true not only for the fact of extradition, but for the elements which are to be considered in contesting the grant of extradition by the Governor of an asylum State.
The principles we are to apply were most recently stated in Michigan v Doran (439 US 282, 288-289): "Whatever the scope of discretion vested in the governor of an asylum state * * * the courts of an asylum state are bound by Art. IV, § 2 * * * by [US Code, tit 18] § 3182, and * * * by the Uniform Criminal Extradition Act. A governor’s grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met * * * Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.”
Doran also cautioned that the search for "historic facts readily verifiable” precludes the courts of the asylum State from plenary review of those "issues that can be fully litigated in the charging state” (supra, at p 290), it being the intent of the extradition clause "to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed”, all to avoid separate views by the States which would " 'balkanize’ the administration of criminal justice among [those] several states” (supra, at p 287).
Relator does not dispute the precepts of Doran but urges that they support his entitlement to discharge. Thus he points to the language of that court — "[the] governor’s grant of extradition is prima facie evidence” — as evincing the view that such grant is but a rebuttable showing that the constitutional and statutory requirements have been met by the demanding State.[5]
Thereupon while not contesting that he has been charged *510 with a crime in the demanding State, that he is the person named in the request, or that he is a fugitive, relator addresses the extradition documents afforded by Utah, urging that the original Utah warrant is supported by mere hearsay, insufficient on its face to support a finding of probable cause.[6] However, it appears that the Doran court — apparently requiring consideration of the extradition clause in conjunction with the "companion” full faith and credit provision (US Const, art IV, § 1) — deems a finding of probable cause in the arrest warrant of the demanding Stpte as foreclosing any further inquiry into sufficiency, regardless of the conclusory language used: "In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination” (Michigan v Doran, supra, at p 290).
We note that the court in Doran declined to express its views on the extradition request when such a probable cause finding is not recited in the arrest warrant (supra, at p 285, n 3; cf. supra, at pp 295-297 [concurring view as to need for a mandatory probable cause determination by the issuing Magistrate when the charge is not filed by a Grand Jury]).
What, then, is the effect when there is no stated finding of probable cause but the warijant could not lawfully issue without it? Or, more to the point, need the Magistrate of the demanding State make a formal finding that probable cause exists, or does the issuance of the warrant by the Magistrate suffice as a de facto statement fpr extradition purposes?
The Utah warrant contains no formal judicial expression of probable cause, although the! complaint on which it is based appears to identify a supporting "probable cause statement.” Applying the language of Doran (supra, at p 286), need the warrant recite a conclusion "which simply mirrors the language of the pertinent [Utah] statutes” when its issuance could not lawfully be forthcoming without such a finding?[7] We *511 think not. Required to give full faith and credit to the "judicial proceedings” of the demanding State (US Const, art IV, § 1), which Doran advises, are "clothed with the traditional presumption of regularity” (439 US, supra, at p 290), we presume the issuance of the warrant by the Utah Magistrate to have been made pursuant to a probable cause statutory requirement, and consider a finding of probable cause implicit in the act of the Utah Magistrate such as to preclude us from further inquiry. To hold otherwise would require the presentation of conclusory language articulating findings of probable cause as the premise for issuance of a warrant utilized in extradition proceedings. Rather, we view the statutory requirement of Utah and the issuance of a warrant by its courts to be equivalent to a stated conclusory finding, in keeping with the rationale expressed in Doran.
Relator would have us look beyond the Utah statutory requirements. Contending that the underlying felony complaint would not support an arrest in this jurisdiction, relator urges that New York should not permit his detention to continue since such would be contrary to New York constitutional provisions (presumably NY Const, art I, § 12); and that whatever the effect of Utah law might be, it is inapplicable in a New York habeas corpus court. He further contends on oral argument that inquiry should not be had into the Utah proceedings and whether the warrant was properly supported there, urging that Doran does not preclude application to the Utah documents of New York’s constitutional requirements on arrest; that without affidavits to support the sworn hearsay complaint, the first requirement of Doran has not been met under New York’s standards.
Whatever the rationale of prior New York and other State and Federal decisions with their "variety of theories and positions” (Michigan v Doran, 439 US 282, 292, n 2 [concurring opn] supra, and cases listed in n 2), we conclude that such pre-Doran views are now supplanted by a Federal standard of probable cause to avoid " 'balkaniz[ing]’ the administration of criminal justice among the several states” (supra, p 287 [ma *512 jority opn]), with the "potential for frustration and obstruction of the process established by the Extradition Clause” (supra, p 298 [concurring opn]).
In Doran, both opinions (supra, pp 285, 295-297) pointed to the court’s prior decision in Gerstein v Pugh (420 US 103) as defining the requirements of the Fourth Amendment in the context of pretrial arrest and detention. Thus, Gerstein (supra, p 111) held that "[t]he standard for arrest is probable cause, defined in terms of facts and circumstances ’sufficient to warrant a prudent man in believing that the [suspect] had committed * * * an offense’ ” such determination having "traditionally * * * been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony” (supra, p 120; emphasis supplied).
While recognizing that States may "vary widely” in considering the "nature of the probable cause determination” (supra, p 123) and that the standard of proof "in some jurisdictions * * * may approach a prima facie case of guilt” (supra, p 119), the Gerstein court held that such was not required by the Fourth Amendment since such determination was not a "critical stage” in the prosecution "as a matter of constitutional principle” (supra, p 122).
If, therefore, we were required to examine the probable cause statement[8] for sufficiency, we would do so under the Fourth Amendment standards, rather than those of this or any other jurisdiction; and since hearsay evidence may constitutionally be utilized to support the Fourth Amendment standard of probability in the issuance of the arrest warrant, we would find the papers filed in support of the requisition of extradition to be sufficient on their face in any event. Acceptance of the relator’s views would otherwise give preeminence to New York practice over Utah procedure,[9] contrary to the intent of the Uniform Criminal Extradition Act and at variance with the companion claulses of section 1 (full faith and credit) and section 2 (extradition demands) of article IV of the United States Constitution.
In sum, therefore, since under these facts we view Doran as presenting to us only the issuje of whether the Utah papers *513 are sufficient on their face in their probable cause statement, we hold that they are; that relator is not entitled to discharge from confinement; and that relator must be surrendered to the agents of the State of Utah in compliance with the requirement of the Governor of the State of New York.

. On oral argument the Assistant District Attorney advised that Mr. Campbell is a police officer.

. The extradition request by the Governor of Utah was based solely on the forgery charge.

. This affidavit recites that the crime was committed on November 10, 1978, contrary to the December 10 date of the felony complaint and the County Attorney’s application. However, the purpose of thisl affidavit was to establish the presence of relator in the demanding State when the crime was committed and his present fugitive status elsewhere (Uniform Criminal Extradition Act, CPL 570.08, 570.54, subd 3). Since the Utah Governor had the original felony complaint before him, and counsel for relator (on oral argument) advised us that he was not contesting relator’s presence in Utah when the felony of forgery was allegedly committed, we do not deem this apparent typographical as significant in these proceedings.

. "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime” (US Const, art IV, § 2, cl 2).

. The concurring opinion in Doran notes the same potential and its seeming contradiction to later language of the majority (439 US 282, 293-294, n 3, par 2).

. On oral argument, counsel for relator raised additional constitutional claims, contending that the extradition clause must be seen not only in a Fourth Amendment perspective, but also Fourteenth Amendment (privileges and immunities, and equal protection clauses) and, it would seem, th<^ commerce clause (citing interstate travel rights) as well. Since we view the Doran test of extradition from the asylum State as precluding a habeas corpus court from malting inquiry beyond the four prongs, we do not consider these provisions to have any bearing on the issues.

. Although relator declines to address Utah law, the Assistant District Attorney provided us with the relevant Utah statute, which states in part: "Issuance of warrant. When a verified complaint is |made before a magistrate charging the *511 commission of a crime or public offense, we must, if satisfied therefrom that the offense complained of has been committed and that there is reasonable ground to believe that the accused committed it, issue a warrant for his arrest” (Utah Code of Criminal Procedure, § 77-12-1). The phrase "reasonable ground” is equivalent to the Fourth Amendment "probable cause” parlance (439 US, supra, at pp 288-289, 297-298). Since the Utah Magistrate presumptively followed the mandate of the statute, his judicial satisfaction is reflected in the fact of issuing the warrant.

. An obligation which, as noted, we feel we do not have in view of the requirements of the quoted Utah statute (supra),

. We note that relator fled Utah prior to his preliminary hearing wherein he could have challenged the probable cause recited in support of the warrant. That proceeding will, of necessity, be available to relatoir on his return to that jurisdiction.