**Joseph Alphonso ZAMBITO, Appellant,**

v.

**Reece H. BLAIR, Sheriff of Ohio County, West Virginia, Appellee.**

No. 79–6156.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1979.

Decided Nov. 26, 1979.

William R. Metzner, Wheeling, W.Va. (Miller & Metzner, Wheeling, W.Va., on brief), for appellant.

Frances W. McCoy, Asst. Atty. Gen., Charleston, W.Va. (Chauncey H. Browning, Atty. Gen., Charleston, W.Va., on brief), for appellee.

Before BUTZNER, FIELD and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

This appeal from the dismissal of a petition for federal habeas corpus concerns the prerequisites which the fourth amendment establishes for interstate extradition.

I.

On May 31, 1978, William P. Cervone, a prosecutor for the Eighth Judicial Circuit of Florida, executed and filed an information which charged that, in Florida, Joseph A. Zambito, the appellant in this case, had committed the crime of robbery with a firearm. The governor of Florida, on June 14, 1978, executed a written demand to the governor of West Virginia that Zambito be arrested and extradited to Florida. The request for extradition was accompanied by copies of:

(1) The information charging Zambito with armed robbery in Florida.

(2) An "Affidavit of Probable Cause" dated June 2, 1978, which had been executed by John G. McManus, a Florida depu-

ty sheriff, and sworn before John J. Crews, a Florida circuit judge. In the affidavit McManus recited the data which had led him to identify Zambito as the perpetrator of the robbery which was charged.

(3) An application, dated June 6, 1978, from the Florida prosecutor to the governor of Florida requesting a demand for the extradition of Zambito.

(4) A written appointment by the governor of Florida, dated June 14, 1978, of agents to receive Zambito and transport him to Florida.

After deciding to comply with the Florida demand, the governor of West Virginia, on August 14, 1978, issued a warrant of arrest for Zambito.[1] Pursuant to the warrant, the appellee, Reece Blair, a West Virginia sheriff, arrested Zambito. The next day Zambito was taken before a West Virginia circuit court judge who informed him of the demand for his extradition, of the crime with which he had been charged, and of his right to test the legality of his arrest by applying for a writ of habeas corpus. Zambito was then admitted to bail and given a reasonable time within which to apply for the writ.[2] He did petition for the writ, contending, in part, that the arrest warrant and his detention under it were invalid under the United States Constitution because they were not supported by a judicial determination of probable cuase. Zambito's petition was denied by the West Virginia circuit court, and an appeal from that judgment was denied by the Supreme Court of Appeals of West Virginia.

Having exhausted remedies available in the courts of West Virginia, on December 14, 1978, Zambito filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of West Virginia. On December 21, 1978, the court issued the writ, holding that, under the fourth amendment, a judicial determination of probable cause is a prerequisite to interstate extradition[3] and finding "that no

---

1. See W. Va. Code § 5–1–8 (1979).

2. See id. § 5–1–9.

3. Given the facts of this case, we have no occasion to review the correctness of that legal conclusion. We assume for present purposes that it is correct. The extradition clause (arti-

judicial determination of probable cause to believe that [robbery with a firearm] had been committed and that [Zambito] had committed it appears among the documents and papers which had been authenticated by the Governor of Florida and upon which the warrant of the Governor of West Virginia had been based and issued." The court further ordered that Sheriff Blair be granted thirty days "within which to present to the Court evidence, if any, that a judicial determination of probable cause had been made in Florida with respect to the said offense with which the petitioner is there charged." The court further ordered that, during the thirty-day period, the effectiveness of the writ would be stayed and that a stay of Zambito's extradition would be continued.

On January 12, 1979, the West Virginia sheriff filed in the district court a motion to modify the December 21, 1978, order. Attached to the motion was a certified copy of an "Order Finding Probable Cause," which was dated May 31, 1978, and which was signed by John J. Crews, a Florida circuit judge. On January 18, 1979, the district court withdrew the writ previously issued and denied Zambito's petition. The court also lifted the stay against his extradition and denied his requests for an evidentiary hearing and for time within which to obtain evidence that the Florida finding of probable cause had been contrived and backdated.

On Appeal Zambito makes the following contentions:

1. The governor's warrant was constitutionally invalid because the papers before the governor when he issued it failed to show on their face a judicial finding of probable cause.

cle IV, § 2, para. 2) of the Constitution contemplates "a summary and mandatory executive proceeding." *Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). In that case, however, a judicial finding of probable cause had been made in the demanding state, and nothing in the opinion, taken in full context, would justify a conclusion that the result would have been the same absent such a judicial finding.

2. Even if extrinsic documents could be considered in assessing the constitutional validity of the governor's warrant, the finding of probable cause dated May 31, 1978 could not validate the warrant because Florida statutory law established no procedure for the judicial determination of probable cause prior to the time that a defendant has been arrested in Florida.[4]

3. Zambito should have been given a greater opportunity to obtain and to present evidence that the order showing a judicial determination of probable cause had been fabricated after the event and backdated.

We reject the contentions and affirm.

## II.

■ As a point of departure, we recognize as a general matter, quite apart from extradition, the necessity that there actually have been a judicial finding of probable cause as a prerequisite to detention for an extended period of time. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975):

Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. . . . Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.[5]

4. There had been, of course, no arrest of Zambito in Florida.

5. As *Gerstein v. Pugh, supra,* makes clear, the limited exceptions for warrantless arrests by police officers under circumstances of exigency not present here clearly have no application to the present case. Such exceptions are limited by the requirement of prompt resort to a court for a finding of probable cause if the restraint is to endure for an extended period.

The same considerations should apply in the extradition context, since arrest in the asylum state and rendition of the prisoner are but introductory segments of the interruption to liberty which will continue in the demanding state. Since a judicial finding of probable cause is a necessary prerequisite for a part of the deprivation of liberty, it should be necessary for the whole.

■ Having accepted for purposes of this case the apparent constitutional imperative that there have been a judicial finding of probable cause to support arrest and rendition on an extradition request, we also point out that, as *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), makes clear, an asylum state may not itself hold a traditional probable cause inquiry when the extradition documents on their face are in order and when those documents, although they do not set out the supporting facts, establish that there had been, in the demanding state, finding that there was "reasonable cause" to believe that the individual as to whom extradition was sought had committed the charged offense.

■ Although the situation in the present case differs from that in *Doran* in that the documents seeking Zambito's extradition set out sufficient facts to support a judicial finding of probable cause, but did not include a statement that such a finding had in fact been made, the West Virginia governor need not have insisted on proof that there had been a judicial finding of probable cause in Florida. He was entitled to infer from (a) the existence of sufficient facts to support a judicial finding of probable or reasonable cause and (b) the fact that his Florida counterpart had asserted a right to extradition, that the requisite judicial action had occurred.

■ In such circumstances, we conclude that the fourth amendment, as applied to the states by the fourteenth amendment, requires only that, prior to an extradition, there in fact have been a finding of probable cause by a neutral judicial officer, not that the demanding papers, additionally, must say so. Where such a finding has actually been made in the demanding state before extradition, and where the person executing the governor's warrant has no substantial basis for doubting that it has been made, execution of that warrant is not constitutionally invalid merely because the documents which were presented to the governor of the asylum state did not, at the time of their presentation, specify that the finding had been made.

■ We do not, of course, suggest that the circumstances would then preclude the person for whom extradition has been sought from calling attention to the omission in the demanding papers of any assertion that there has been a judicial finding of probable cause, and, from obtaining, as here, an independent court inquiry as to whether such a finding had been made. Indeed, we do not read *Michigan v. Doran* as precluding a similar court inquiry into the correctness of a statement contained in the demanding papers that a judicial finding of probable cause had been made. At 439 U.S. at page 290, 99 S.Ct. at page 536, it is made clear that the holding in *Doran* applies only "*when* a neutral judicial officer of the demanding state *has determined* that probable cause exists." (Emphasis added). The statement in the demanding papers that there has been a finding of probable cause is no more conclusive than would be an absence of such a statement. It is the actual fact, not the statement or lack of a statement that, in the end, matters.

Here, the judicial finding of probable cause by the Florida court had been made on May 31, 1978, prior to the request for extradition. That fact satisfied the constitutional requirement. An omission from the extradition request of a statement of the fact did not make any less complete the compliance with the requirement for a judicial determination of probable cause. The district judge acted quite correctly in calling upon West Virginia to prove that a proper judicial finding of probable cause had been made, with unconditional issuance of the writ to follow in the absence of such proof.

■ By January 12, 1979, a certified copy of a Florida finding of probable cause had reached Sheriff Blair and his attorney, and had been filed in the district court. The sheriff was the governor's agent for the arrest of Zambito,[6] and the adequacy of the governor's warrant for interstate extradition was established insofar as the Constitution was concerned. No fourth amendment interests of the defendant would be served by a constitutional imposition on the governor of West Virginia of mere paper shuffling requirements. The Constitution does not force a governor to go back and re-issue a warrant after a missing certification of a probable cause finding which had actually taken place is supplied.

## III.

■ Zambito attacks the Florida finding of probable cause as made in circumstances not provided for in Florida law. He points out that the court in that state purported to act under a rule (Florida R.Cr.P. 3.131) providing for probable cause determinations for defendants in custody and for defendants on pretrial release, but saying nothing about determinations for persons who, like Zambito, had never been apprehended in Florida. The West Virginia sheriff's response is to refer to art. V, § 16, para. 3 of the Florida Constitution as conferring on judges power to issue all writs necessary or proper to the complete exercise of their jurisdiction.

We need not enter such a thicket of Florida law. The Florida judge purported to exercise his authority, and in doing so issued an order which not only is presumptively valid, but also is, under the assumption on which this opinion proceeds, required by the United States Constitution for implementation of the extradition clause. Nothing in the Federal Constitution would deny such authority to the Florida judge, and his order inherently contains within itself a determination that he had such authority. Even if that represents a novel rule under Florida law, we have no occasion to invalidate its application here.

There undoubtedly may be some procedural defects so grave that they negative either the neutrality or the judicial character of the proceedings which lead up to the finding of probable cause required by the fourth amendment for purposes of the extradition clause, but the defects alleged here are not in that category.

## IV.

■ Zambito also complains that he should have been given additional opportunity to prove that the Florida finding of probable cause was made, not on May 31, 1978, but at some later date, after the extradition request had been made. We do not necessarily accept that, if there had been no finding of probable cause when the West Virginia governor issued his warrant, the defect could not have been subsequently cured, at any time prior to actual rendition of Zambito. For present purposes, however, we shall assume, for sake of argument, that the finding must antedate the governor's warrant. Even if we make that assumption, however, there was no error in the district court's having refused Zambito an evidentiary hearing on the question of whether the order finding probable cause had been backdated. In *Blackledge v. Allison*, 431 U.S. 63, 80, 97 S.Ct. 1621, 1632, 52 L.Ed.2d 136 (1977), the Supreme Court rejected the notion

> that every set of allegations not on its face without merit entitles a habeas corpus petitioner to an evidentiary hearing. As in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have a sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment.

Although not so labeled by the district court, the proceedings here amounted to a disposition by summary judgment. Zambito and his attorney had been on notice since January 12, 1979, that the government had moved that the writ of habeas corpus be

---

6. *See* W. Va. Code § 5–1–8(a)(1979).

revoked on the grounds of the existence of the certified "Order Finding Probable Cause" dated May 31, 1978. The court did not act until January 18, 1979. Even though time was short and Zambito's resources available for investigation were limited, it was incumbent that he do more than simply rely on naked, totally unsubstantiated allegations of fraud based purely on suspicion. By affidavit or some other form of evidence he had to provide at the very least an adequate explanation as to why he had not been able to investigate the matter. Yet he produced nothing. As the *Blackledge* Court indicated, when faced with a motion for summary judgment, the petitioner for habeas corpus is "required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the District Court or to explain his inability to provide such proof. Fed. Rules Civ.Proc. 56(e), (f)." 431 U.S. at 80–81, 97 S.Ct. at 1632–1633. The certified "Order Finding Probable Cause" met the standards for self-authentication of domestic public documents under seal. *See* Fed. R.Evid. 902(1). Hence, the district court did not err when it admitted the document as genuine. The date on the document is admissible to prove that the document was in fact executed on that date. Fed.R.Evid. 803(8)(A). Because Zambito offered no rebutting evidence or explanation to suggest that there was a genuine issue of fact to be resolved, the disposition in what amounted to a summary judgment was proper.

*AFFIRMED.*