No. 80–6663. Ruben v. United States. C. A. 9th Cir. Certiorari denied.

No. 80–6672. Sonderup v. United States. C. A. 5th Cir. Certiorari denied.

No. 80–1099. Alabama v. Battles. Ct. Crim. App. Ala. Motion of respondent for leave to proceed in forma pauperis granted. Certiorari denied.

Chief Justice Burger, with whom Justice Blackmun and Justice Rehnquist join, dissenting.

I

On September 19, 1979, the Governor of Florida sent to the State of Alabama a demand for respondent's extradition. The demand consisted of four documents: (a) a verified information; (b) an affidavit; (c) a warrant for respondent's arrest; and (d) a formal request for extradition.

The information, dated August 20, 1979, charges that on or about July 1, 1979, respondent was present in Bay County, Fla., and obtained an automobile from one Stimmett by issuing a personal check for $1,300 drawn upon a closed account at an Alabama bank. After describing this transaction in detail and alleging that respondent acted with knowledge that there were insufficient funds on deposit to cover his check, the information charges that respondent thereby

committed two felonies: (a) obtaining a motor vehicle with intent to defraud and (b) passing a worthless check.[1] The information is verified by an oath in which the prosecutor swears that the charges "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," and also that the information "is filed in good faith."

The affidavit, sworn to before a Magistrate on August 31, 1979, avers: the affiant is an investigator with the office of the State Attorney in Panama City, Bay County, Fla.; the affiant has investigated the offense; and "during the course of my investigation, I obtained the following facts," at which point the affidavit substantially repeats the facts charged in each count of the information.

The arrest warrant, pursuant to Florida law, was automatically issued by the Clerk of the Circuit Court of Bay County upon the filing of the verified information.

The request for extradition is signed by the Governor and Secretary of State of Florida and bears the seal of the State of Florida. It certifies that respondent "was present in [Florida] at the time of the commission of said crime and thereafter fled from the justice of this State"; that respondent has taken refuge in Alabama; and that the other extradition documents are "authentic and duly authenticated in accordance with the laws of the State of Florida."

On October 11, 1979, the Governor of Alabama ordered extradition "in obedience to the Constitution and the laws of the United States and the laws of the State of Alabama" and issued a rendition warrant. Pursuant to that warrant, Alabama placed respondent under arrest.

Respondent immediately sought habeas corpus in the Circuit Court of Etowah County, Ala. At the habeas hear-

---

[1] Each of these offenses is punishable as a felony in the third degree, subject to a fine of up to $5,000 and a term of imprisonment not exceeding five years. Fla. Stat. §§ 817.52, 832.05; and §§ 775.082 (3) (d), 775.083 (1) (c) (1979).

ing, respondent admitted that he was the person sought in the extradition papers; that he had traveled to Florida on the date in question; that he had issued the check to Stimmett in return for the car; that there had not been sufficient funds in the account at the time he issued the check; that he had taken the car to Alabama and sold it; and that he still owed the money for which his check was tendered. Tr. 5–7.[2] Respondent argued, however, that the "certification" of the Florida extradition documents failed to comply with the Alabama extradition statute. The Circuit Court denied the writ.

The Alabama Court of Criminal Appeals reversed. 389 So. 2d 957 (1980). That court reasoned that the papers submitted by the Florida authorities did not meet procedural requirements purportedly implied by language of the Alabama extradition statute. This statute (Uniform Criminal Extradition Act) provides:

> "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing and accompanied by a copy of an indictment found, or by an information supported by affidavit, in the state having jurisdiction of the crime or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state, and the copy must be authenticated by the executive authority making the demand, which shall be prima facie evidence of its truth."
> Ala. Code § 15–9–31 (1975).

---

[2] Respondent testified that the account "wasn't supposed to be a closed bank account" at the time he wrote the check and that he had told Stimmett that there were insufficient funds in the account and that he would have to return to Alabama and put more money in the bank. Tr. 6, 8.

The statute also requires in pertinent part that the documents supporting the demand must show that the accused

> "is lawfully charged by indictment or by an information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state . . . ."   Ala. Code § 15–9–33 (1975).

The Court of Criminal Appeals interpreted these statutory provisions to require that an affidavit, based upon personal knowledge, must coincide with and be attached to the information.   The court concluded that Florida had failed to satisfy the Alabama statute because the affidavit "is not sufficient in law to support the information which is dated some eleven days earlier," because it "is not attached" to the information, and because "there is no showing of any personal knowledge on [the affiant's] part of the source, or reliability of the facts asserted in the affidavit."   389 So. 2d, at 960.   It is uncontroverted that Florida law imposes none of these requirements,[3] and that under Florida law, respondent will be accorded a nonadversary probable-cause hearing within 72 hours of the time Florida takes custody.[4]

## II

Article IV, § 2, cl. 2, of the United States Constitution provides:

> "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered

---

[3] See Fla. Rule Crim. Proc. 3.140 (g); *State* v. *Bacon*, 385 So. 2d 1160, 1163 (Fla. App. 1980).

[4] See Fla. Rule Crim. Proc. 3.131 (a).   This Rule allows a finding of probable cause to be based upon "sworn complaint, affidavit, deposition under oath, or, if necessary, upon testimony under oath properly recorded."

up, to be removed to the State having Jurisdiction of the Crime."

The Extradition Clause expressly turns on the existence of a "charge," not on what types or quantities of proof support the charge. It mandates that extradition shall be "a summary and mandatory executive proceeding." *Michigan* v. *Doran,* 439 U. S. 282, 288 (1978). The Clause does not permit the asylum state's courts to weigh the evidence upon which the "Demand of the executive Authority" of a sister state is based. Instead, the asylum state may consider only

> " '(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.' " *Pacileo* v. *Walker,* 449 U. S. 86, 87 (1980), quoting *Doran, supra,* at 289.

The decision of the Court of Criminal Appeals plainly exceeds the permissible scope of determining "whether the extradition documents on their face are in order" and "whether the defendant has been charged with a crime in the demanding state." Under the guise of simply considering whether the documents were facially in order, the Alabama court actually imposed a requirement that Florida's documents must satisfy the Alabama court's particular view of probable cause to arrest. Although *Doran* involved a situation in which the demanding state had already made a judicial determination that probable cause existed, see 439 U. S., at 284, I perceive no material difference between that case and the present case. In either situation, an asylum state must look to the "charge"; it is not free to substitute its own judgment for the probable-cause determination to be made by the demanding state's courts. " 'To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and man-

datory procedures authorized by Art. IV, § 2.'" *Pacileo* v. *Walker, supra,* at 88, quoting *Doran, supra,* at 290.

Florida's demand was supported by a verified information charging respondent with felonies allegedly committed by him while he was present in Florida, an arrest warrant, and the affidavit made before the Magistrate. These documents more than satisfied Florida requirements for the commencement of a prosecution, and respondent makes no argument that those requirements are unconstitutional. Although we would have no occasion in this case to decide whether Alabama could constitutionally require all of these papers,[5] it is certain that Alabama was entitled to no more. In overturning an order of the Governor of Alabama which expressly rested on the United States Constitution and which was prima facie evidence "that the constitutional and statutory requirements have been met," *Doran, supra,* at 289, the Alabama court based its decision on a strained view of the relevant law. In *Doran,* we took pains to emphasize that the purpose of the Extradition Clause "was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states." 439 U. S., at 287.

The papers submitted by Florida plainly show that respondent is charged with a crime in Florida and that he is a fugitive from justice. Notwithstanding our heavy workload, the conflict between this decision and *Doran* is so obvious as to warrant a grant of certiorari and summary reversal of the judgment.[6]

---

[5] In particular, we need not decide whether an asylum state may constitutionally insist that the demanding state must, in every case in which prosecution is initiated by information, produce some sort of affidavit in addition to a verified information.

[6] The decision of the Alabama court is particularly egregious when viewed in light of respondent's testimony at the habeas hearing in the Alabama Circuit Court. Respondent expressly admitted that he was the person named in the extradition papers, that he had gone to Florida and

committed the *actus reus* alleged, and that he had returned to Alabama after doing so. In other words, with the sole exception of state of mind, respondent admitted every element of the offenses charged, and he also admitted having crossed the state line afterward.