KENNETH LEE WHITEHOUSE, petitioner.

Barnstable. May 16, 1984. — August 7, 1984.

Present: GREANEY, C.J., BROWN, & KASS, JJ.

*Extradition and Rendition. Habeas Corpus. Constitutional Law,* Extradition.

Failure of Colorado extradition documents to set forth an explicit judicial
  finding of probable cause to believe that a certain theft and burglary
  were committed and that the petitioner committed them was not fatal to
  the petitioner's extradition to that State for trial on those charges, where
  the documents included an affidavit in support of an arrest warrant and
  the warrant itself, which, under Colorado law, could not have been
  issued without a judicial determination of probable cause. [456-458]
Where the person named in extradition documents from the State of Colorado
  conceded that he was the same person depicted in the "mug shot" photo-
  graphs accompanying the documents, the fact that the affidavit identify-
  ing the photographs was incomplete was of no consequence. [458-459]
Any defect in the pleading of one of two crimes, either of which would be
  sufficient to support the petitioner's extradition to Colorado, was of no
  consequence in an extradition proceeding. [459]


PETITION filed in the Superior Court Department on July
12, 1983.

The case was heard by *Irwin,* J.

*William F. Spallina* for the petitioner.

*Raymond B. Lamb,* Assistant Attorney General, for the re-
spondent.

KASS, J. In response to a demand by the Governor of Col-
orado for the rendition of Whitehouse (the petitioner) to face
criminal charges in Colorado, the Governor of Massachusetts
issued a warrant for Whitehouse's arrest and his delivery to
the custody of an agent of Colorado. A State trooper executed
the rendition warrant on July 12, 1983, and Whitehouse, claim-
ing that the demanding papers were deficient, petitioned for a

writ of habeas corpus. G. L. c. 276, § 19. A Superior Court judge denied the petition and Whitehouse appealed. We affirm.

Whitehouse was first arrested without a warrant in April, 1983, on information that he stood charged in Colorado of crimes (theft and second-degree burglary) punishable by imprisonment for a term exceeding one year. G. L. c. 276, § 20B. See Colo. Rev. Stat. §§ 18-4-203 & 18-4-401 (1973). He was released on bail pending arrest on a Governor's warrant. G. L. c. 276, § 20D. When the warrant arrived some months later Whitehouse, by arrangement, voluntarily surrendered himself in the Superior Court sitting in Barnstable County and filed his petition for habeas corpus that day. He remained at liberty on $200 bail. After denial of his petition on August 16, 1983, by the Superior Court, Whitehouse moved to stay further steps in rendition pending determination of his appeal, and that motion was allowed by a single justice of this court. See *Upton, petitioner,* 387 Mass. 359, 364-370 (1982).

1. *Probable cause.* The principle of *Gerstein* v. *Pugh,* 420 U.S. 103, 114 (1975), that the Fourth Amendment to the United States Constitution requires a judicial determination of probable cause as a prerequisite to extended detention following arrest, applies with equal force to extradition arrests. *Consalvi, petitioner,* 376 Mass. 699, 700-701 (1978). *Zambito* v. *Blair,* 610 F.2d 1192, 1196 (4th Cir. 1979), cert. denied, 445 U.S. 928 (1980).

*Michigan* v. *Doran,* 439 U.S. 282, 286-290 (1978), however, made the point that the extradition clause of the United States Constitution (Art. IV, § 2, cl. 2), prohibits an asylum State from conducting its own probable cause hearing if the extradition documents on their face contain a statement indicating that a judicial determination has already been made in the demanding State. "[T]he proceedings of the demanding state are clothed with the traditional presumption of regularity . . . [therefore], when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination." *Doran, supra* at 290. See *Commonwealth* v. *Sawyer,* 389 Mass. 686, 695 n.10 (1983).

*Michigan* v. *Doran* also articulates the limited nature of a rendition proceeding in an asylum State.

> "Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

*Id.* at 289. See *Pacileo* v. *Walker,* 449 U.S. 86, 87 (1980) (per curiam); *Alabama* v. *Battles,* 452 U.S. 920 (1981) (Burger, C.J., dissenting from denial of certiorari); *Upton, petitioner,* 387 Mass. at 361. See also *Maldonado, petitioner,* 364 Mass. 359, 362 (1973). See also the requirements of G. L. c. 276, § 14 (a part of our version of the Uniform Criminal Interstate Rendition Law). This is both because "[i]nterstate extradition was intended to be a summary and mandatory executive proceeding" and because "[a] governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Doran, supra,* at 288 & 289.

In the present case, unlike *Doran,* the extradition documents do not, on their face, include an explicit judicial finding that there is probable cause to believe a theft and burglary have been committed and that Whitehouse committed them. This omission is not, as Whitehouse urges, fatal to the extradition proceedings. "[T]he fourth amendment, as applied to the states by the fourteenth amendment, requires only that, prior to an extradition, there in fact have been a finding of probable cause by a neutral judicial officer, not that the demanding papers, additionally, must say so . . . . [E]xecution of that warrant is not constitutionally invalid merely because the documents which were presented to the governor of the asylum state did not, at the time of their presentation, specify that the finding had been made." *Zambito* v. *Blair,* 610 F.2d at 1196. See also *Michigan* v. *Doran,* 439 U.S. at 296-298 (Blackmun, J., concurring).

Whether the demanding State has made a judicial determination of probable cause may be determined from all the relevant sources which, in this context, include the extradition documents, the assertion by the Governor of the demanding State of a right to extradition, and an examination of the demanding State's criminal practice. See, e.g., *Zambito* v. *Blair,* 610 F.2d at 1196; *Consalvi, petitioner,* 376 Mass. at 702; *Moore, petitioner,* 2 Mass. App. Ct. 399, 401-402 (1974); *Keefer* v. *Leach,* 198 Colo. 101, 102 (1979). See also *Wentworth* v. *Bourbeau,* 188 Conn. 364, 371 (1982) ("presumption of regularity . . . . accompanies a finding of probable cause in an arrest warrant signed by a judge").

The documents forwarded from Colorado which requested the rendition of Whitehouse include an April, 1979, arrest warrant and an affidavit in support of that arrest warrant. The affidavit is sworn to before a Colorado County Court judge whose jurat concludes the affidavit. The same judge then signed on the same day the warrant for Whitehouse's arrest. Under Colorado law "[a]n arrest warrant shall issue only on affidavit sworn to or affirmed before the judge and relating facts sufficient to establish probable cause that an offense has been committed and probable cause that a particular person committed that offense." Colo. Rev. Stat. § 16-3-108 (1978). Parallel language appears in Colo.R.Crim.P. 4.2 (1973). See also Colo. Rev. Stat. § 16-5-205(2) (1978); Colo.R.Crim.P. 9(a)(2) (1973). Whatever reservations we might have about the affidavit given in application for a warrant to arrest Whitehouse by the undersheriff of San Miguel County, we are bound on the record made in Colorado to conclude that the county judge had found that the affidavit established probable cause to believe that Whitehouse had committed the burglary described in the affidavit. Under *Michigan* v. *Doran,* 439 U.S. at 290 and *Zambito* v. *Blair,* 610 F.2d at 1196, that is sufficient to validate the rendition papers from Colorado so far as probable cause is concerned.

2. *Technical defects.* It is awkward that the rendition papers from Colorado include an affidavit identifying mugshots of Whitehouse which bears a jurat that it was "subscribed and

sworn to," but which the affiant did not sign. Irregularity in an unnecessary affidavit, however, does not spoil an otherwise acceptable set of rendition papers. *Upton, petitioner,* 387 Mass. at 362-363. Whitehouse conceded that the photographs were pictures of him. There was, therefore, sufficient information to connect the photos to the person named in the rendition warrant, and to connect the latter to Whitehouse. See *Hamel, petitioner,* 8 Mass. App. Ct. 877 (1979).

Similarly, the "Complaint for Use as Information" was not a necessary ingredient to the extradition package, and thus allegations of technical deficiencies in that document do not avail the petitioner. The documents "substantially charge[d]," see G. L. c. 276, § 14, Whitehouse with having committed two crimes, theft and second-degree burglary, under Colorado law. As in *Upton, petitioner,* 387 Mass. at 363, the petitioner's argument that theft was improperly pleaded is of no consequence because the count as to second degree burglary would support the extradition. As noted in *Upton,* it is unlikely that asylum States may pass on pleading questions which arise under the law of the charging State. See *Munsey* v. *Clough,* 196 U.S. 364, 373 (1905).

The order of the Superior Court denying the petition for a writ of habeas corpus is affirmed. The order of the single justice of this court dated October 4, 1983, staying rendition proceedings, is vacated.

*So ordered.*