# MICHIGAN *v.* DORAN

No. 77–1202.  Argued October 4, 1978—Decided December 18, 1978

BURGER, C. J., delivered the opinion of the Court, in which STEWART, WHITE, POWELL, REHNQUIST, and STEVENS, JJ., joined. BLACKMUN, J., filed an opinion concurring in the result, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 290.

*Robert A. Derengoski,* Solicitor General of Michigan, argued the cause for petitioner. With him on the brief were *Frank J. Kelley,* Attorney General, and *John A. Wilson* and *Jann Ryan Baugh,* Assistant Attorneys General.

*Kathleen M. Cummins* argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether the courts of an asylum state may nullify the executive grant of extradition on the ground that the demanding state failed to show a factual basis for its charge supported by probable cause. 435 U. S. 967 (1978).

(1)

On December 18, 1975, Doran was arrested in Michigan and charged with receiving and concealing stolen property. Mich. Comp. Laws § 750.535 (1970). The charge rested on Doran's possession of a stolen truck bearing California license plates, which he had driven from Arizona. Michigan notified Ari-

zona authorities of Doran's arrest and sent them a photograph of Doran taken on the day of his arrest. On January 7, 1976, a sworn complaint was filed with an Arizona Justice of the Peace, charging Doran with the theft of the described motor vehicle, Ariz. Rev. Stat. Ann. §§ 13–661 to 13–663, 13–672 (A) (Supp. 1957–1977), or, alternatively, with theft by embezzlement, § 13–682 (Supp. 1957–1977). The Justice of the Peace issued an arrest warrant which stated that she had found "reasonable cause to believe that such offense(s) were committed and that [Doran] committed them . . . ."

While the Michigan charges were pending, Doran was arraigned in Michigan on January 12 as a fugitive. A magistrate extended Doran's detention as a fugitive to provide time to receive the expected request for extradition from Arizona.[1] On February 11 the Governor of Arizona issued a requisition for extradition. Attached to the requisition were the arrest warrant, two supporting affidavits, and the original complaint on which the charge was based. The Governor of Michigan issued a warrant for Doran's arrest and his extradition was ordered.

Doran was arraigned on the Michigan warrant on March 29. He then petitioned the arraigning court for a writ of habeas corpus, contending that the extradition warrant was invalid because it did not comply with the Uniform Criminal Extradition Act. Mich Comp. Laws §§ 780.1 to 780.31 (1970). Cf. Ariz. Rev. Stat. Ann. §§ 13–1301 to 13–1328 (Supp. 1957–1977). The court twice denied a writ of habeas corpus; the Michigan Court of Appeals denied an application for leave to appeal and dismissed Doran's complaint for habeas corpus. *People* v. *Doran,* Nos. 28507 (May 4, 1976) and 30516 (Nov. 22, 1976). The Michigan Supreme Court, however, granted leave to appeal the denial of the first habeas corpus petition.

---

[1] Michigan dismissed its criminal charges against Doran on February 9 in deference to the extradition on charges pending in Arizona.

*People* v. *Doran,* 397 Mich. 886 (1976). On review, the court reversed the trial court's order and mandated Doran's immediate release. *In re Doran,* 401 Mich. 235, 258 N. W. 2d 406, rehearing denied, 402 Mich. 951 (1977).[2]

## (2)

The Michigan Supreme Court reasoned that because a significant impairment of liberty occurred whenever a person was arrested in one state and extradited to another that impairment must be preceded by a showing of probable cause to believe that the fugitive had committed a crime. In addition to relying on *Gerstein* v. *Pugh,* 420 U. S. 103 (1975),[3] the court found support for its conclusion in § 3 of the Uniform Criminal Extradition Act, Mich. Comp. Laws § 780.3 (1970), which requires that an affidavit must "substantially charge"[4] the fugitive with having committed a crime under the law of the demanding state. That court construed "substantially charge" to mean there must be a showing of probable cause.

---

[2] At the time of his release, Doran had been in custody for 18 months in Michigan pending the extradition proceedings and his challenge to them. Doran's counsel moved to dismiss certiorari in this Court on the ground of mootness due to her inability to locate him in Michigan. That motion is denied. Cf. *Eagles* v. *United States ex rel. Samuels,* 329 U. S. 304, 306–308 (1946).

[3] In *Gerstein* we held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U. S., at 114. Because Arizona provided a judicial determination of probable cause for the arrest warrant, we need not decide whether the criminal charge on which extradition is requested must recite that it was based on a finding of probable cause.

[4] These terms appear to derive from language in *Munsey* v. *Clough,* 196 U. S. 364, 373 (1905): "If it appear that the indictment substantially charges an offense for which the person may be returned to the State for trial, it is enough for this [extradition] proceeding." See also *Pearce* v. *Texas,* 155 U. S. 311, 313 (1894); Uniform Criminal Extradition Act § 3, 11 U. L. A. 93 (1974).

The essence of the holding of the Supreme Court of Michigan is that the courts of an asylum state may review the action of the governor and in that process re-examine the factual basis for the finding of probable cause which accompanies the requisition from the demanding state.[5]   The court concluded:

"In the case at bar, there is no indictment or document reflecting a prior judicial determination of probable cause. The Arizona complaint and arrest warrant are both phrased in conclusory language which simply mirrors the language of the pertinent Arizona statutes.   More importantly, the two supporting affidavits fail to set out facts which could justify a Fourth Amendment finding of probable cause for charging [Doran] with a crime." 401 Mich., at 240–242, 258 N. W. 2d, at 408–409 (footnote omitted).

The Michigan court assumed that arrest warrants could be issued in Arizona without a preliminary showing of probable cause since this was said to happen often in Michigan.   In that court's view, neither the complaint which generated the Arizona charge, the affidavits in support of the Arizona arrest warrant, nor the recitals of the Arizona judicial officer set out sufficient facts to show probable cause.   We disagree and we reverse.

(3)

We turn to the question of the power of the courts of an asylum state to review the finding of probable cause made by a judicial officer in the demanding state.   Article IV, § 2, cl. 2, of the United States Constitution on the subject of extradition is clear and explicit:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Au-

---

[5] See, e. g., Kirkland v. Preston, 128 U. S. App. D. C. 148, 385 F. 2d 670 (1967).

thority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

To implement this provision of the Constitution, see *Innes* v. *Tobin,* 240 U. S. 127, 131 (1916); *Prigg* v. *Pennsylvania,* 16 Pet. 539, 617 (1842), Congress has provided:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled *shall* cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and *shall* cause the fugitive to be delivered to such agent when he shall appear." 18 U. S. C. § 3182 (emphasis added).[6]

The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 132–133 (1917); *Appleyard* v. *Massachusetts,* 203 U. S. 222, 227 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus "balkanize" the administration of criminal justice among the several states. It articulated, in mandatory language, the

---

[6] Section 3182 remains virtually unchanged from the original version enacted in 1793. 1 Stat. 302. See also Rev. Stat. § 5278; 18 U. S. C. § 662 (1940 ed.).

concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause, served important national objectives of a newly developing country striving to foster national unity. Compare *Biddinger, supra,* with *McLeod* v. *Dilworth Co.,* 322 U. S. 327, 330 (1944). In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy.

Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. *Biddinger, supra,* at 132; *In re Strauss,* 197 U. S. 324, 332 (1905); R. Hurd, A Treatise on the Right of Personal Liberty and the Writ of Habeas Corpus 598 (1858). The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

Near the turn of the century this Court, after acknowledging the possibility that persons may give false information to the police or prosecutors and that a prosecuting attorney may act "either wantonly or ignorantly," concluded:

> "While courts will always endeavor to see that no such attempted wrong is successful, on the other hand, care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt." *In re Strauss, supra,* at 332–333.

Whatever the scope of discretion vested in the governor of an asylum state, cf. *Kentucky* v. *Dennison,* 24 How. 66, 107 (1861), the courts of an asylum state are bound by Art. IV, § 2, cf. *Compton* v. *Alabama,* 214 U. S. 1, 8 (1909), by § 3182, and, where adopted, by the Uniform Criminal Extradition

Act. A governor's grant of extradition is prima facie evidence
that the constitutional and statutory requirements have been
met. Cf. *Bassing* v. *Cady*, 208 U. S. 386, 392 (1908). Once
the governor has granted extradition, a court considering
release on habeas corpus can do no more than decide
(a) whether the extradition documents on their face are in
order; (b) whether the petitioner has been charged with a
crime in the demanding state; (c) whether the petitioner is the
person named in the request for extradition; and (d) whether
the petitioner is a fugitive. These are historic facts readily
verifiable.

Under Arizona law, felony prosecutions may be commenced
either by an indictment or by filing a complaint before a
judicial officer. Ariz. Rule Crim. Proc. 2.2 (1973). The mag-
istrate or justice of the peace before whom the criminal charge
is filed must issue an arrest warrant if it is determined that
there is reasonable cause to believe that an offense has been
committed.[7] The inquiry the judicial officer is required to
make is directed at the traditional determination of reason-
able grounds or probable cause. *Erdman* v. *Superior Court*,
102 Ariz. 524, 433 P. 2d 972 (1967); *State* v. *Currier*, 86
Ariz. 394, 347 P. 2d 29 (1959). Here the Justice of the Peace
in Arizona, having the complaint at hand, issued the warrant
for Doran's arrest after concluding that there was "reasonable
cause to believe that such offense(s) were committed and that
the accused committed them."

The Supreme Court of Michigan, however, held that the
conclusion was deficient because it did not recite the factual
basis for the determination made by the Arizona judicial
officer. This holding finds no support in the record read in

---

[7] The Arizona justice of the peace may, if necessary, subpoena addi-
tional witnesses before issuing a warrant. Ariz. Rev. Stat. Ann. § 22–311
(1975); Ariz. Rules Crim. Proc. 2.4, 3.1, 3.2 (1973 and Supp. 1978–1979).
The Arizona Rules of Criminal Procedure require that on a finding of
probable cause the judicial officer shall issue a warrant reciting the infor-
mation on which it is based. Rules 3.1 and 3.2 (1973).

the light of the mandatory provisions of Art. IV, § 2, cl. 2, and Arizona law. Moreover it overlooks the "conclusory language" in which criminal charges are ordinarily cast whether by indictment or otherwise. Cf. *Ex parte Reggel,* 114 U. S. 642, 651 (1885).

Under Art. IV, § 2, the courts of the asylum state are bound to accept the demanding state's judicial determination since the proceedings of the demanding state are clothed with the traditional presumption of regularity. In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination. Section 2, cl. 2, of Art. IV, its companion clause in § 1, and established principles of comity merge to support this conclusion. To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2. See, *e. g., Sweeney* v. *Woodall,* 344 U. S. 86, 90 (1952); *Marbles* v. *Creecy,* 215 U. S. 63, 69–70 (1909); *Pierce* v. *Creecy,* 210 U. S. 387, 404–405 (1908).

We hold that once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state.

Accordingly, the judgment of the Michigan Supreme Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, concurring in the result.

I am not willing, as the Court appears to me to be, to bypass so readily, and almost to ignore, the presence and significance of the Fourth Amendment in the extradition

context. That Amendment is not mentioned at all in the discussion portion (part (3)) of the Court's opinion. I therefore must assume that in the Court's view the Amendment is of little or no consequence in determining what type of habeas corpus review may be had in the asylum State. In contrast to the Court's apparent position, I feel that it is necessary to face the Fourth Amendment issue squarely in order to arrive at a principled result in this case.

## I

The petition for certiorari in this case presented one, and only one, issue:

"Did the Michigan Supreme Court misconstrue the Fourth Amendment and the Extradition clause of the United States Constitution when it held that a fugitive may challenge a demanding state's extradition documents on the basis of lack of probable cause under the Fourth Amendment, in a collateral proceeding in the asylum state's courts?" Pet. for Cert. 2.[1]

On this question the state and federal courts are deeply divided.[2] Despite the obvious importance of the issue, the

---

[1] The question was rephrased, without change in substance, in petitioner's brief on the merits. Brief for Petitioner 2.

The respondent submitted a counterstatement of the question:

"The Michigan Supreme Court did not misconstrue the Fourth Amendment and the Extradition Clause by holding that the scope of a habeas corpus challenge to extradition legitimately encompasses a scrutiny by the asylum jurisdiction of the charging documents supporting the demanding State's requisition to determine whether such documents facially reflect probable cause and hence substantially charge the accused fugitive with crime." Brief for Respondent 1-2.

See also Brief in Opposition 1.

It is obvious that each side regards the Fourth Amendment to be of significance.

[2] One of the leading cases to the effect that the Fourth Amendment requires the asylum State to determine whether a demand for extradition

Court refuses the opportunity afforded by this case to clarify the requirements of the Fourth Amendment in interstate extradition. Instead, the Court avoids the question on which certiorari was granted by holding that, even if the Fourth Amendment does apply to interstate extradition, its requirements, in this case, were satisfied. *Ante,* at 285 n. 3. This convenient assumption, in my view, perpetuates confusion in an area where clarification and uniformity are urgently needed.

If, on the facts of this case, there could be no question whatsoever that the Fourth Amendment was satisfied, then one would have to agree that it would be unnecessary, strictly

---

is supported by probable cause is *Kirkland* v. *Preston,* 128 U. S. App. D. C. 148, 385 F. 2d 670 (1967). A number of other courts have followed the general line of analysis set out in *Kirkland.* See, *e. g., United States ex rel. Grano* v. *Anderson,* 446 F. 2d 272 (CA3 1971); *Montague* v. *Smedley,* 557 P. 2d 774 (Alaska 1976); *Pippin* v. *Leach,* 188 Colo. 385, 534 P. 2d 1193 (1975); *Brode* v. *Power,* 31 Conn. Supp. 411, 332 A. 2d 376 (Super. Ct. 1974); *Tucker* v. *Virginia,* 308 A. 2d 783 (D. C. App. 1973); *Clement* v. *Cox,* 118 N. H. 246, 385 A. 2d 841 (1978); *People ex rel. Cooper* v. *Lombard,* 45 App. Div. 2d 928, 357 N. Y. S. 2d 323 (1974); *Locke* v. *Burns,* —— W. Va. ——, 238 S. E. 2d 536 (1977). On the other hand, some courts have rejected *Kirkland's* accommodation of the Fourth Amendment and the Extradition Clause. See, *e. g., In re Golden,* 65 Cal. App. 3d 789, 135 Cal. Rptr. 512, app. dismissed and cert. denied *sub nom. Golden* v. *California,* 434 U. S. 805 (1977); *People ex rel. Kubala* v. *Woods,* 52 Ill. 2d 48, 284 N. E. 2d 286 (1972); *McEwen* v. *State,* 224 So. 2d 206 (Miss. 1969); *Ault* v. *Purcell,* 16 Ore. App. 664, 519 P. 2d 1285, cert. denied, 419 U. S. 858 (1974); *Commonwealth ex rel. Marshall* v. *Gedney,* 237 Pa. Super. 372, 352 A. 2d 528 (1975); *Salvail* v. *Sharkey,* 108 R. I. 63, 271 A. 2d 814 (1970). The cases on both sides exhibit a variety of theories and positions. Further, at least in Massachusetts and South Dakota, federal courts in habeas proceedings in effect have nullified decisions by state supreme courts that refused to apply the requirements of the Fourth Amendment to extradition. Compare *Ierardi* v. *Gunter,* 528 F. 2d 929 (CA1 1976), with *In re Ierardi,* 366 Mass. 640, 321 N. E. 2d 921 (1975), and *Wellington* v. *South Dakota,* 413 F. Supp. 151 (SD 1976), with *Wellington* v. *State,* 90 S. D. 153, 238 N. W. 2d 499 (1976).

speaking, for the Court to decide whether the Amendment applies. But one really cannot know whether the Fourth Amendment was satisfied without examining and determining the procedural protections the Amendment provides and without considering the Fourth Amendment interests at stake, and then weighing those interests against the ones furthered by the Extradition Clause, Art. IV, § 2, cl. 2, of the Constitution.[3]

---

[3] As I understand today's ruling, the Court does not decide whether and to what extent the Fourth Amendment applies in extradition proceedings. Instead, the Court for present purposes is willing to *assume* that the Amendment applies to proceedings governed by the Extradition Clause and that it requires, at a minimum, a judicial determination of probable cause prior to any significant restraint on liberty. The Court then holds that the Extradition Clause prohibits the courts of the asylum State from reviewing the adequacy of a properly certified judicial determination of probable cause made in the demanding State. Further, the Court holds that the Supreme Court of Michigan erred in finding that no such determination took place in this case. The documents certified by the Governor of Arizona and approved by the Governor of Michigan indicated on their face that such a finding had been made, and the Michigan court's conclusion to the contrary was based on its impression of procedures followed in Michigan and its own evaluation of the adequacy of the supporting affidavits.

I nevertheless find the implications of certain passages in the Court's opinion to be troublesome. The Court says, *ante*, at 290, that "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." This seems to imply that it is only the governor who is to review the charging papers, and that the habeas court has no role whatsoever in the matter. A like implication appears in the Court's language, *ibid.*, that "the courts of the asylum state are without power to review the determination." On the other hand, in an earlier passage, *ante*, at 289, the Court says that the grant of extradition by the governor of an asylum State "is prima facie evidence that the constitutional and statutory requirements have been met." This, for me, is a suggestion that the governor's review and determination effect only a rebuttable presumption that there has been a judicial determination in the demanding State. I also note that some passages in the Court's opinion seem to disregard the proposition that "the Full Faith and Credit Clause does not require that sister States

294

I would hold that the Fourth Amendment applies in the extradition context, and I would use the opportunity this case affords to articulate, for the guidance of state courts, the proper accommodation between the Fourth Amendment and the Extradition Clause.

## II

The Court's analysis, I fear, rests on cases that preceded the application of Fourth Amendment standards to state criminal proceedings. The basic assumption of these early cases—that the Constitution left the States with virtually complete control over their procedures [4]—has not been tenable since the Court in *Wolf* v. *Colorado,* 338 U. S. 25, 27–28 (1949), held that the Fourth Amendment applies to the States through the Fourteenth Amendment, and in subsequent cases held that state criminal procedures must conform to the same Fourth Amendment standards that apply to federal proceedings. See, *e. g., Mapp* v. *Ohio,* 367 U. S. 643 (1961); *Ker* v. *California,* 374 U. S. 23 (1963); *Beck* v. *Ohio,* 379 U. S. 89 (1964). Whatever may have been the law of extradition as propounded by this Court "[n]ear the turn of the century," *ante,* at 288, the Extradition Clause and its implementing statute, 18 U. S. C. § 3182, no longer may be considered in isolation from the Fourth Amendment.[5]

---

enforce a foreign penal judgment." *Nelson* v. *George,* 399 U. S. 224, 229 (1970). See *ante,* at 287–288, and 290.

These seemingly inconsistent implications indicate that one cannot determine in a principled way what procedures are appropriate in the asylum State without first giving consideration to the Fourth Amendment values that are at stake.

[4] The Court made this assumption explicit in *In re Strauss,* 197 U. S. 324, 331 (1905), a case quoted by the Court, *ante,* at 288: "Under the Constitution each State was left with full control over its criminal procedure."

[5] It is of interest to note that when a potential conflict between the Extradition Clause and some other constitutional provision has been recognized, this Court long ago suggested that the Clause be interpreted so as to avoid the conflict. In *Kentucky* v. *Dennison,* 24 How. 66 (1861),

The Court also relies on what it describes as the "clear and explicit" language of the Extradition Clause. *Ante,* at 286. But the language of the Fourth Amendment is equally "clear and explicit":

> "The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons . . . to be seized."

The words of the Amendment provide no grounds for a distinction between "seizures" of persons for extradition and seizures of persons for any other purpose. Neither do they distinguish between an extradition warrant and the usual arrest warrant. Indeed, the "security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment," *Wolf* v. *Colorado,* 338 U. S., at 27, applies with undiminished force to the intrusion that occurs in the process of extradition.

The requirements of the Fourth Amendment in the context of pretrial arrest and detention were spelled out in *Gerstein* v. *Pugh,* 420 U. S. 103 (1975). The Amendment, it was said, "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." [6]

---

Mr. Chief Justice Taney, speaking for the Court, discussed the Extradition Clause's requirement that a person be "charged" with "Treason, Felony, or other Crime." He indicated that the general term "charged" should be construed in accord with accepted constitutional principles governing the roles of the judicial and executive departments. He concluded that the governor of the demanding State was not authorized by the Extradition Clause to demand the return of a fugitive unless the fugitive "was charged in the regular course of judicial proceedings." *Id.,* at 104.

[6] The Court noted that it has held that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. *Ex parte United States,* 287 U. S. 241, 250 (1932)." 420 U. S., at 117 n. 19.

*Id.,* at 114. The Court there stated that extended confinement before trial "may imperil the suspect's job, interrupt his source of income, and impair his family relationships . . . . When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." *Ibid.*

The extradition process involves an "extended restraint of liberty following arrest" even more severe than that accompanying detention within a single State. Extradition involves, at a minimum, administrative processing in both the asylum State and the demanding State, and forced transportation in between. It surely is a "significant restraint on liberty." For me, therefore, the Amendment's language and the holding in *Gerstein* mean that, even in the extradition context, where the demanding State's "charge" rests upon something less than an indictment, there must be a determination of probable cause by a detached and neutral magistrate, and that the asylum State need not grant extradition unless that determination has been made. The demanding State, of course, has the burden of so demonstrating.

Having said this, however, I recognize that it is the purpose of the Extradition Clause to secure the prompt rendition of interstate fugitives with a minimum of friction between States. See *Appleyard* v. *Massachusetts,* 203 U. S. 222, 227–228 (1906). The Constitution's concern for efficiency and comity in extradition could be seriously jeopardized if the courts of the asylum State could examine the factual basis for a probable-cause determination already made by a magistrate in the demanding State.[7] I therefore would not go so far as to

---

[7] Other types of review in the asylum State's courts entail less potential for friction and delay. As the Court indicates, *ante,* at 289, 18 U. S. C. § 3182 itself contemplates that the courts of the asylum State may make inquiry into "historic facts readily verifiable," such as the identity of the fugitive and the existence of a "charge." There is nothing to indicate that

permit the asylum State to delve into the niceties of the underpinnings of the demanding State's probable-cause determination, as the demanding State will be obliged to do if probable cause is made an issue when the fugitive is returned to that State. It is enough if the papers submitted by the demanding State in support of its request for extradition *facially* show that a neutral magistrate has made a finding of probable cause. If they do, it is not the province of the courts of the asylum State, subject to extended appellate review, to probe the factual sufficiency of that finding. That probe may be conducted in due course in the demanding State.[8]

### III

Here the Arizona papers were facially sufficient. An arrest warrant had been issued by an Arizona Justice of the Peace, and that warrant stated specifically: "I have found reasonable cause to believe that such offense(s) were committed and that the accused [Doran] committed them." App. 26a. I equate that recital of "reasonable cause" with the "probable cause" of Fourth Amendment parlance. To be sure, the phraseology is conclusory, but this still was a judicial determination of

---

this type of routine and basic inquiry has led to frustration of the extradition process.

[8] This limitation on the scope of habeas review in the asylum State's courts could perhaps be said to be a limit on the alleged fugitive's Fourth Amendment' rights, since habeas review to determine the existence of probable cause justifying detention is not usually so restricted. See *Gerstein* v. *Pugh,* 420 U. S., at 115. Nevertheless, when the documents certified and approved by two governors indicate on their face that a judicial determination of probable cause has been made in the demanding State, this compromise, if it be one, limiting the scope of review in the courts of the asylum State, seems a proper accommodation of the constitutional provisions. The nature of habeas relief in the courts of the demanding State and in the federal courts is not at issue in this case. Nor does this case involve the scope of habeas relief in circumstances in which the terms of the Extradition Clause do not apply.

probable cause, and that, for me, is sufficient for Extradition Clause-Fourth Amendment purposes. The asylum State should be allowed to scrutinize the charging documents only to ascertain that a detached and neutral magistrate made a determination of probable cause. That was the case here. Any further review would create potential for frustration and obstruction of the process established by the Extradition Clause.[9]

I therefore concur only in the result.

---

[9] It seems obvious, of course, that Arizona's procedure is not to be measured by the fact—if it be a fact—that arrest warrants in Michigan often are issued without a preliminary showing of probable cause.