**Allan George LUCERO, alias Larry Wayne Shepherd, alias Bob Wayne McKinney, Jr., alias Lee Rodgers, Petitioner-Appellant,**

v.

**George MARTIN, Sheriff, Prowers County, Respondent-Appellee.**

**Nos. 82SA220 and 82SA221.**

Supreme Court of Colorado,
En Banc.

March 28, 1983.

Joe T. Ulibarri, Pueblo, for petitioner-appellant.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for respondent-appellee.

QUINN, Justice.

Allan George Lucero appeals from the denial of habeas corpus relief in connection with extradition proceedings initiated by the state of Kansas. The trial court discharged the writ and ordered Lucero's extradition. We affirm the ruling.

### I.

Lucero was arrested on October 21, 1981, pursuant to a fugitive warrant issued by the District Court of Prowers County, Colorado, for Allan George Lucero, alias Lee Rodgers. The warrant was issued on the basis of a complaint and affidavit of a Lamar police detective alleging that there was an outstanding Kansas arrest warrant for Lucero for the crimes of burglary and theft.[1] Unable to post bail, Lucero was committed to the county jail to await the issuance of a governor's warrant on the requisition of the executive authority of the state of Kansas. While awaiting the extradition documents from Kansas, a second arrest warrant was issued by a Prowers County District Court on another Kansas charge of theft.[2] On November 24, 1981, the governor of Kansas submitted a requisition for Allan G. Lucero, alleging that he committed the crimes of burglary and theft in the state of Kansas and that he thereafter fled from the state and is presently in the state of Colorado. The documents accompanying the requisition included two separate criminal informations filed against Lucero in the district court of Sedgwick County, Kansas, and two arrest warrants, each of which was supported by an affidavit[3] and a finding of probable cause by a Kansas judge. On December 1, 1980, the

---

**1.** Section 16–19–114, C.R.S.1973 (1978 Repl. Vol. 8), states:

"When any person within this state is charged on the oath of any credible person before any judge of this state with the commission of any crime in any other state and, except in cases arising under section 16–19–107, with having fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of his bail, probation, or parole, or whenever complaint has been made before any judge in this state setting forth on the affidavit of any credible person in another state that a crime has been committed in the other state and that the accused has been charged in such state with the commission of the crime, and, except in cases arising under section 16–19–107, has fled from justice or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of his bail, probation, or parole, and is believed to be in this state, the judge shall issue a warrant directed to any peace officer commanding him to apprehend the person named therein, wherever he may be found in this state, and to bring him before the same or any other judge or court which may be available in or convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit, and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant."

Section 16–19–107, C.R.S.1973 (1978 Repl.Vol. 8), which relates to the extradition of persons committing an act in this state which results in a crime in the demanding state, is not applicable to this proceeding.

**2.** The second warrant also was issued pursuant to section 16–19–114, C.R.S.1973 (1978 Repl. Vol. 8).

**3.** One Kansas information charged Lucero with burglary of a barn, Kan.Stat.Ann. § 21–3715 (1981), and the theft of three horses, Kan.Stat. Ann. § 21–3701(a) (1981), both of which are class D felonies and were allegedly committed on January 21, 1981, at Sedgwick County, Kansas. The other Kansas information charged the defendant with felony theft of a motorcycle, Kan.Stat.Ann. § 21–3701(a) (1981), allegedly committed in Sedgwick County on July 31, 1981. The affidavit in support of the arrest warrant for the January 21, 1981, offenses alleged as follows:

"JIM MC DAVITT, being first duly sworn on oath, states;

"I am a Detective with the Sedgwick County Sheriff's Office, and in that capacity was assigned to investigate a reported Burglary that occurred in Sedgwick County, Kansas, at 13200 E. 53rd Street North.

"I was told by Joan Greer, the victim, that while she was away at work on January 21, 1981, persons entered into her barn and re-

governor of Colorado issued his warrant for the arrest of Allan G. Lucero, also known as Lee Rodgers, as a fugitive. The extradition documents, consisting of the Kansas requisition with accompanying documents and the Colorado governor's warrant, were then filed in the district court.

Lucero challenged the Colorado governor's warrant by filing two petitions for writs of habeas corpus.[4] The court issued the writs and directed them to the sheriff of Prowers County, with a return date on January 11, 1982. The sheriff filed a written return requesting that the writs be discharged because the Kansas requisition and supporting documents substantially charged Lucero with having committed a crime in Kansas and with being a fugitive from that state and further because the Colorado governor's warrant constituted a prima facie finding that Lucero is in fact the fugitive from justice sought by the state of Kansas.

moved various articles of equipment used on horses, and also took three (3) horses valued at $6,000.00. Two of the horses were owned by Greer and one was owned by Glennys Anderson of 13300 E. 53rd Street North. Greer advised she had authorized no one to remove these items or the horses, and Anderson advised the same. Greer told me that she suspected a former live-in boyfriend named Larry Lucero, and that she broke up with Lucero the week before and as Lucero moved out of her home, he threatened her with the taking of the horses. On January 22, 1981, Greer called me and said that she had received an anonymous call that indicated she would find her horses at 321 Jackson Avenue. I went to 321 Jackson Avenue on January 23, 1981 and saw three horses that matched the description given by victim.

"I called Greer to 321 Jackson Avenue and she identified the three (3) horses in question as being hers. I then drew and served a search warrant at 321 Jackson Avenue and recovered the horses and other equipment. I interviewed Rex Johnson, who lives at 321 Jackson Avenue, on January 26, 1981, and after advising Johnson of his rights and Johnson waiving them, Johnson advised that he bought the horses from a man giving him the name of Larry Lucero. Johnson advised that he met Lucero at 13200 E. 53rd St. North on January 21, 1981. I asked Johnson to meet with Det. Gary Steed and make an Indent-a-kit picture of the man that sold him the horses and he did so. I then showed the Ident-a-kit picture to Greer who identified that picture as Allen Lucero, who is the brother of Larry Lucero. I was further advised by Johnson that he had paid for the horses with a check that he stopped payment on.

"I talked with one Thelma Black of Southwest National Bank and she advised that she had the check and that it was made with Larry Lucero as the receiver and had Larry Lucero crossed [out] and the name 'Allen Lucero' written in.

"I went to Otasco, Inc. at Central and West Streets in Wichita, Sedgwick County, Kansas, on January 29, 1981, and took that same check into custody. I talked with Bill Wine-garner, the manager of the Otasco, and Winegarner stated that the check was cashed at Otasco by Allan G. Lucero, who is an ex employee."

The affidavit in support of the arrest warrant for the July 31, 1981, theft alleged:

"E.J. King, being first duly sworn on oath, states:

"I am a detective with the Wichita Police Department, and in that capacity, was assigned a theft case involving a 1979 Harley Davidson 1300 cc motorcycle VIN 7G65216H9 that is owned by Hugo's Harley Davidson of Wichita, Sedgwick County, Knasas [sic].

"I was told by Officer Naasz of the Wichita Police Department who was told by Patricia Troxel of Hugo's Harley Davidson, that a person identifying himself and known to her as Lee Rodgers took the 1979 Harley Davidson motorcycle for a test drive on July 31, 1981, agreeing to return the motorcycle within one hour on July 31, 1981. Lee Rodgers failed to return the motorcycle as agreed, and this motorcycle is still listed as missing property.

"On October 22, 1981, affiant obtained an official police photograph from the Indio, California Police Department of a person identified as Allan G. Lucero, who has been known to reside in the Wichita, Kansas, area. Affiant presented a mug spread to Patricia Troxel and Nancy Ryan of Hugo's Harley Davidson on October 23, 1981, and both witnesses picked the photograph of Allan Lucero as being the person who had taken the Harley Davidson motorcycle on July 31, 1981. The owners of Hugo's Harley Davidson advised me that the motorcycle was valued in excess of $100.00."

4. Lucero filed two petitions based on the two fugitive warrants issued by the Prowers County District Court, thereby resulting in two habeas corpus cases in the district court. The cases were ultimately consolidated for hearing. Lucero filed two separate notices of appeal. The two cases filed in this court also have been consolidated.

· At the hearing on the return the sheriff relied upon the sufficiency of the documents accompanying the Kansas requisition as support for the Colorado governor's warrant. Lucero, agreeing with the court's ruling that he had the burden of going forward with his case, testified on his own behalf. He stated that he had lived in Lamar, Colorado since February 18, 1981, and was not in the state of Kansas on July 31, 1981, the date of one of the alleged thefts.[5] At the conclusion of the evidence Lucero moved to make the writ absolute, arguing primarily that the Kansas affidavits in support of the arrest warrants failed to establish probable cause. The district court rejected his argument and concluded that Lucero's testimony was not sufficiently clear and convincing to offset the presumption of validity attaching to the Kansas requisition and the Colorado governor's warrant. The court quashed the writ of habeas corpus and ordered Lucero extradited to Kansas.

Lucero challenges the order of extradition on two interrelated grounds, one substantive and the other procedural. His substantive argument is that the Kansas requisition and the accompanying documents were insufficient to support the district court's order of extradition. His procedural argument is that where the respondent in a habeas corpus proceeding relies solely upon the requisition and accompanying documents to support an order of extradition, the court is obliged to make an initial finding that the documents are legally suffi-

cient before the habeas corpus claimant is put to the burden of overcoming the presumption of validity attaching to the extradition documents. We reject both arguments.

## II.

■ The requisition and the accompanying documents from Kansas were legally sufficient to require Lucero's extradition to that state. In the context of a habeas corpus proceeding under the Uniform Criminal Extradition Act, a demand for extradition for the purpose of criminal prosecution in the demanding state is legally sufficient when: (1) the requisition states that the person sought was present in the demanding state at the time of the commission of the alleged offense and thereafter fled from that state; (2) the requisition is accompanied by a copy of an indictment or a copy of an information supported by affidavit, or by a copy of an arrest warrant supported by an affidavit made before a magistrate; (3) the indictment, information, or affidavit substantially charges the person sought with having committed a crime under the law of the demanding state; and (4) the copy of the indictment, information, or affidavit is authenticated by the executive authority making the demand. Section 16–19–104, C.R.S.1973 (1978 Repl.Vol. 8).[6]

As long as the requisition documents substantially comply with these statutory requirements, extradition should be ordered notwithstanding minor discrepancies or in-

5. Lucero offered no testimony to prove that he was not in Kansas on January 21, 1981, the date of the burglary and the theft of the horses.

6. Section 16–19–104, C.R.S.1973 (1978 Repl. Vol. 8), provides:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 16–19–107, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate

there, together with a copy of any warrant which was issued thereupon, or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, or judgment of conviction or sentence must be authenticated by the executive authority making the demand."

consistencies in the documents. *E.g., Griffith v. Nelson,* 647 P.2d 228 (Colo.1982); *Miller v. Cronin,* 197 Colo. 391, 593 P.2d 706 (1979); *Martello v. Baker,* 189 Colo. 195, 539 P.2d 1280 (1975); *Bryan v. Conn,* 187 Colo. 275, 530 P.2d 1274 (1975). In this case the requisition documents clearly satisfy the standard of substantial compliance. The Kansas governor's requisition stated that Lucero was present in the state of Kansas, committed criminal acts in that state, and was now in the state of Colorado. The requisition was accompanied by a copy of two criminal informations, each supported by affidavit, charging Lucero with the crimes of burglary and theft in the district court of Sedgwick County, Kansas. Also supporting the Kansas requisition were two arrest warrants, each supported by separate and detailed affidavits which a Kansas judge found sufficient to constitute probable cause for Lucero's arrest for burglary and theft. The governor of Kansas certified in his requisition that the Kansas informations, affidavits and arrest warrants were authentic. The governor of Colorado acted on this requisition by ordering Lucero's arrest as a fugitive. Since the name of the person in the Colorado governor's warrant was the same as that in the original fugitive complaint and the Kansas requisition documents, a prima facie case for extradition was established. *See Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978); *Richardson v. Cronin,* 621 P.2d 949 (Colo.1980); *Light v. Cronin,* 621 P.2d 309 (Colo.1980). Lucero presented no evidence controverting the prima facie case for extradition with respect to the Kansas burglary and theft of January 21, 1981. As to Lucero's testimony that he was not in Kansas on July 31, 1981, the date of the other theft, it was the court's prerogative as fact finder to reject it as unpersuasive.

■ Lucero argues that regardless of the prima facie case for extradition established by the extradition documents, the district court erred in not making an independent determination of the sufficiency of the Kansas affidavits to establish probable cause. The decision of the United States Supreme Court in *Michigan v. Doran, supra,* succinctly answers this argument:

"In short, when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to renew the determination. Section 2, cl. 2, of Art. IV, its companion clause in § 1, and established principles of comity merge to support this conclusion....[7]

"We hold that once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." 439 U.S. at 290, 99 S.Ct. at 536, 58 L.Ed.2d at 528.

### III.

■ We find no merit in the argument that the order of extradition was somehow invalid because the court did not initially rule upon the legal sufficiency of the extradition documents before Lucero testified at the habeas corpus hearing. Procedurally, a habeas corpus proceeding is civil in character, and the legality of the detention should be resolved on the basis of the return filed in answer to the writ. *E.g., People v. Pitcher,* 192 Colo. 195, 557 P.2d 395 (1976); *McNamara v. People,* 159 Colo. 139, 410 P.2d 517 (1966); *Struble v. Hicks,* 123 Colo. 16, 224 P.2d 932 (1950). The sheriff's return in this case relied upon the Colorado governor's warrant and the Kansas requisition documents as the source of his authority to retain Lucero in custody. These docu-

---

**7.** *U.S. Const.* Art. IV, Sec. 2, cl. 2 states:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Juris-

diction of the Crime." The "companion" clause in section 1, referred to in *Doran,* states, in pertinent part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

ments, which had been filed with the court prior to the habeas corpus hearing, satisfied the constitutional requirement of probable cause in an extradition proceeding, *e.g.*, *Michigan v. Doran, supra; Pippin v. Leach,* 188 Colo. 385, 534 P.2d 1193 (1975), and the statutory requirements of the Uniform Criminal Extradition Act, section 16–19–104, C.R.S.1973 (1978 Repl.Vol. 8). Because a prima facie case for extradition had been established, the burden devolved upon Lucero to prove by clear and convincing evidence either that he was not a fugitive from Kansas or that he was not substantially charged with a crime in that state. *E.g., Lomax v. Cronin,* 194 Colo. 523, 575 P.2d 1285 (1978); *Dressel v. Bianco,* 168 Colo. 517, 452 P.2d 756 (1969); *Capra v. Miller,* 161 Colo. 448, 422 P.2d 636 (1967).

Before presenting any evidence on his own behalf, Lucero could have moved the court for an order dismissing the return and making the writ absolute on the ground that the extradition documents failed to establish the legality of his arrest and detention as a fugitive. If the motion had been made, the court had the discretion either to rule on the motion at that point or to decline to rule until the close of all the evidence. *See* C.R.C.P. 41(b)(1). In this case, however, Lucero failed to make any such motion; instead, he acquiesced in the burden properly placed upon him by the court. The district court concluded at the close of all the evidence that Lucero's testimony was not sufficient to overcome the prima facie case established by the extradition documents on file with the court. Under these circumstances there is no merit in Lucero's claim of procedural error.

The judgment is affirmed.