**Ex parte Pauline Fletcher HASSENPFLUG.**

**No. 2–88–132–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 4, 1988.

John D. Nation, Dallas, for appellant.

Tim Curry, Dist. Atty. and Chris Marshall, Asst. Dist. Atty., Fort Worth, for appellee.

Before HILL and KELTNER, JJ., and HUGHES (J. Retired), Sitting by Assignment.

OPINION

KELTNER, Justice.

The sole issue presented in this application for writ of habeas corpus and petition for writ of mandamus is whether the trial court was under a duty to hold an evidentiary hearing to determine the applicant's entitlement to bond.

Under the facts of this case, we hold that the trial court was not under a duty to hold an evidentiary bond hearing. Therefore, we overrule the application for writ of habeas corpus, and deny the petition for writ of mandamus.

The applicant was incarcerated in Tarrant County awaiting trial on charges of conspiracy to commit murder and arson. The Tarrant County district court had set bond at $100,000 on these offenses. While she was being held, it was discovered that the applicant was a fugitive from the State of Arizona, where she is wanted for the offenses of murder and conspiracy to commit murder. As a result, Arizona sought the applicant's extradition. After the gov-

ernor's warrant was delivered, the applicant filed a writ of habeas corpus to determine the legality of the warrant issued by the Governor of the State of Texas ordering her extradition. At the conclusion of the hearing, the trial court granted the extradition and remanded applicant to the custody of the Tarrant County sheriff. The Tarrant County sheriff was ordered to hold her for extradition after the Tarrant County charges were resolved.[1] The applicant has appealed these rulings to this court.

Additionally, she filed a notice of appeal and requested the court to set bond pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.35 (Vernon 1979).

The trial court denied bond without hearing. In the order denying bail, the trial court noted that Arizona had requested that applicant be held without bond and that the arrest warrant provided that the Arizona charge is a capital offense "where the proof is evident and the presumption great that applicant committed the offense...." As a result, the trial court ruled that a hearing was not necessary.

The resolution of applicant's contention requires that we consider two matters of first impression in Texas:

1. Does article 44.35 give a right to bond in extradition cases after the issuance of the governor's warrant?

2. Is the finding that applicant is charged with a capital offense "where proof is evident and the presumption great the applicant committed the offense" a judicial finding that precludes Texas from relitigating this issue?

## DOES ARTICLE 44.35 GIVE A RIGHT TO BOND IN EXTRADITION CASES AFTER THE GOVERNOR'S WARRANT ISSUES?

■ The threshold issue in this case is whether Texas law gives a right to bond in an extradition case after the issuance of a governor's warrant. To determine this question, we must consider two statutory schemes: first, the Uniform Extradition Act, and second, article 44.35 of the Texas Code of Criminal Procedure.

The Uniform Extradition Act contains no provision that would allow a fugitive to be released on bond following the issuance of a governor's warrant. In fact, bond is only permitted under the Act during the time between arrest and the issuance of the governor's warrant. TEX.CODE CRIM. PROC.ANN. art. 51.13, sec. 16 (Vernon 1979). Therefore, if the Uniform Extradition Act is considered in the abstract, a fugitive is not entitled to bail once the governor's warrant has been executed.

However, article 44.35 provides:

In any habeas corpus proceeding ... in this State where the defendant is remanded to the custody of an officer and an appeal is taken to an appellate court, *the defendant shall be allowed bail by the court or judge so remanding the defendant, except in capital cases where the proof is evident.* The fact that such defendant is released on bail shall not be grounds for a dismissal of the appeal except in capital cases where the proof is evident.

TEX.CODE CRIM.PROC.ANN. art. 44.35 (Vernon 1979) (emphasis added).

Obviously, article 44.35 would allow bond in all but the most aggravated cases.

The State argues that the basis behind the Uniform Extradition Act is uniformity and, as a result, states should not look to provisions outside the Act that would defeat uniformity. On the other hand, the applicant argues that the Uniform Extradition Act cannot be considered in the abstract and that Texas is free to adopt additional procedures which have the effect of modifying the Act.

Our Court of Criminal Appeals considered this identical issue in *Ex parte Quinn*, 549 S.W.2d 198, 200 (Tex.Crim.App. 1977). In finding that article 44.35 does

---

1. Generally, the governor of the asylum state does not issue the governor's warrant until charges pending in the asylum state are resolved. We note that Governor Clements' warrants requested immediate extradition to Arizona. The trial judge apparently denied that request and ordered the applicant held in Texas until the Tarrant County charges were disposed of.

give the applicant in an extradition case a right to bond after the governor's warrant is issued, the court stated:

> We conclude that the Legislature having enacted Article 44.35, supra, as part of the same Code of Criminal Procedure as Article 51.13, supra, (Uniform Extradition Act) and not having excepted extradition cases therefrom, the provisions of Article 44.35, supra, control except in capital cases where the proof is evident. We hold the court erred in not setting bail pending appeal.

*Id.* at 200.

In essence, the Texas Court of Criminal Appeals held that Texas law gives an applicant a right to bond that is not included in the Uniform Extradition Act.

Nonetheless, the State argues that other United States Supreme Court decisions overrule *Ex parte Quinn. Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978); *see also Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In *Doran,* the United States Supreme Court held that the asylum state may not review the determination of good cause made by the demanding court.

Of importance to this case, the Supreme Court emphasized that to hold otherwise would defeat the purpose of the uniform summary and mandatory procedures of the extradition clause of the United States Constitution, and by inference, the Uniform Extradition Act. In *Cuyler v. Adams,* the United States Supreme Court implicitly held that the intent of drafters of uniform acts is of critical importance in interpreting the rights of detainees in states where the acts are passed.[2]

The State makes a well-reasoned argument that these two Supreme Court cases stand for the proposition that the Uniform Extradition Act should be applied uniformly in each state. As a result, the State argues that the courts should not look to procedures outside the Act when dealing with extradition. While this argument is persuasive, we must decline to adopt it. Instead, we feel bound by the Court of Criminal Appeals' announcement in *Quinn* that Texas has provided additional remedies to fugitives in extradition proceedings.

*IS TEXAS BOUND BY THE ARIZONA FINDING THAT CHARGES OF A CAPITAL OFFENSE "WHERE PROOF IS EVIDENT AND THE PRESUMPTION GREAT THE APPLICANT COMMITTED THE OFFENSE"?*

■ The State argues that the applicant has no right to bond under article 44.35 because Texas courts are bound by the Arizona court's determination that proof is evident and "the presumption great the Defendant committed the offense...."

We hold that Texas is bound by the judicial determination of a demanding state. To hold otherwise would require Texas courts to make an independent determination of this issue and would result in a disruption of the summary procedure anticipated by the Uniform Extradition Act. In an analogous situation, the United States Supreme Court held in the *Doran* case that once a neutral judicial officer of the demanding state makes a determination of an issue that could be fully litigated in that state, the holding is binding on the asylum state. *Doran,* 439 U.S. at 290, 99 S.Ct. at 536. We realize that the holding in *Doran* dealt solely with the determination of "probable cause." However, we feel that the analysis controls the issue of bail that is before us.

Nonetheless, the applicant argues the determination that proof was evident in the demanding state consisted only of a check in the box in the arrest warrant form signed by the Arizona justice court. The language adjacent to this box is disjunctive and states:

> Defendant is to be held without bond ... because the charge is a capital offense and the proof evident and the presumption great the Defendant committed the offense *or* that Defendant was released on another felony at the time of the commission of the new felony. [Emphasis added.]

2. The "uniform" law analyzed in *Cuyler* was the Interstate Agreement on Detainers. The State argues that the Court's rationale should apply to all uniform acts.

The applicant argues there is no showing which reason the Arizona justice court relied on to deny bail. In essense, the applicant suggests it is possible that Arizona denied bail for reasons not recognized under our statutes. However, the evidence submitted with the governor's warrant disputes this theory. First, there is no evidence the defendant was released on another felony at the time the new Arizona offense was allegedly committed. To the contrary, the supporting paperwork contains a notation from an Arizona sheriff's department indicating that a criminal history search concluded that applicant had no previous criminal history. The documents are also clear that applicant was charged with a capital charge and the offense carries the possibility of a death sentence.

Second, our record reflects that this issue was not raised in the trial court. In fact, applicant's counsel repeatedly referred to the capital murder charge in Arizona and stated it would be difficult for Arizona to get the death penalty on the crime alleged.

We hold that the Texas court was bound by the determination of the Arizona court that the applicant was charged in a capital case in which the proof was evident and presumption great that the applicant committed the offense. The trial court was not required to relitigate that issue and did not abuse its discretion by failing to do so.

In conclusion, we find that the trial court did not abuse its discretion in refusing to hold an evidentiary hearing to set bond. We overrule applicant's application for habeas corpus and petition for writ of mandamus.