**Ex parte Daniel Orkis LEBRON.**

**No. 04–96–00181–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 11, 1996.

Discretionary Review Refused
Feb. 12, 1997.

Ronald P. Guyer, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before RICKHOFF, GREEN and DUNCAN, JJ.

## OPINION

GREEN, Justice.

This is an accelerated appeal of an order denying habeas corpus relief on an extradition to the Commonwealth of Puerto Rico. We affirm.

### Facts

Lebron was arrested in San Antonio on January 5, 1996 on a warrant from the Commonwealth of Puerto Rico as a fugitive from justice on charges of possession with intent to distribute and conspiracy to distribute marijuana. He was freed on a $50,000 bond until March 5, 1996, when the Governor's warrant was served upon him in open court. On March 7, 1996, Magistrate Carruthers heard evidence in a contested hearing on extradition, denied Lebron's petition for writ of habeas corpus, and ordered the extradition. Lebron was released again on a $50,-000 bond pending this appeal on condition that he reside in San Antonio during the appeal.

At the hearing on habeas corpus, the State called two witnesses and the Court, a third. Deputy Faz of the Bexar County Sheriff's Department identified the packet of documents forwarded to him from the Governor's office. The questioning concerned whether the documents were adequate to support extradition. The charging instruments are in Spanish with English translation versions attached. The sheriff's fingerprint expert also took the prints of appellant during a brief recess, analyzed and classified the prints, then compared them to the set received from Puerto Rico. He testified that the prints

taken of Lebron that day and the prints from Puerto Rico were those of the same person.

The trial court called an interpreter to translate and identify portions of the Spanish documents entitled *"Denuncia."* The interpreter defined the meaning of the term to be a form of accusation and offered these translations: "Denouncement, advice, notice; accusation, denouncement, notice of termination, arraignment, denunciation." He further testified that the *denuncias* were "sworn to" before a magistrate. A finding of probable cause is checked, arrest is ordered, and an amount of bond is fixed. The accusation of possession with intent to distribute marijuana is one contrary to law, presented upon personal knowledge by a police officer. The conspiracy charge is presented upon information and belief.

## The Federal Constitution

The United States Constitution provides the archetype for interstate extradition:

A person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. CONST. art. IV, 2, cl. 2. Congress gave effect to this provision through federal legislation which provides that "the executive authority of the State ... of which such person has fled shall cause him to be arrested and secured...." 18 U.S.C. § 3182. Implementation of this provision is left to each state, and Texas has followed the majority of states in adopting the Uniform Criminal Extradition Act.[2]

The issue of extradition is not merely a matter of comity between states. Rather, it "involves the protection owed by a sovereign to persons within its territory." *United States ex rel. Kassin v. Mulligan,* 295 U.S.

396, 55 S.Ct. 781, 79 L.Ed. 1501 (1935). Nevertheless, the extradition clause itself provides an absolute right of the demanding state and a duty of the asylum state and it effectively eliminates state boundaries for the purpose of putting offenders to a speedy trial. *See Biddinger v. Commissioner of Police,* 245 U.S. 128, 132–33, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917); *Appleyard v. Massachusetts,* 203 U.S. 222, 227, 27 S.Ct. 122, 123, 51 L.Ed. 161 (1906); *see generally* Leslie W. Abramson, *Extradition in America: Of Uniform Acts and Governmental Discretion,* 33 BAYLOR L.REV. 794 (1981). The framers of the Constitution intended the extradition clause to foreclose any fugitive from justice sanctuary in another state. "It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of article IV.... In the administration of justice, ... national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy." *Michigan v. Doran,* 439 U.S. 282, 287–88, 99 S.Ct. 530, 534–35, 58 L.Ed.2d 521 (1978).

## The Uniform Criminal Extradition Act

The Uniform Criminal Extradition Act, or UCEA, is codified at article 51.13 of the Texas Code of Criminal Procedure. Section 2 of the UCEA acknowledges the duty of the governor, within the parameters of the act and the federal constitution, to cause a fugitive to be arrested and delivered up to the executive authority of the demanding state.

The UCEA sets forth the minimum procedural requirements placed upon the demanding state and the asylum state and grants considerable discretion to the governor of the asylum state to determine whether the fugitive ought to be surrendered. TEX.CODE CRIM. PROC. ANN. art. 51.13, §§ 3, 4 (Vernon 1979). When the governor determines that the extradition request is in order, section 7

2. Forty-eight states, Puerto Rico and the Virgin Islands have adopted substantially similar versions of the uniform act. The Texas version is codified at article 51.13 of the Code of Criminal Procedure. The uniform act has not been adopted in Mississippi, South Dakota, or the District of Columbia, where each has an extradi-

tion statute which subjects the person sought to greater discretionary treatment under their respective extradition procedures. See MISS. CODE ANN. §§ 99–21 to –11 (1972); S.C. CODE §§ 17–9–10 TO –70 (1976); D.C. CODE ANN. §§ 23–401 TO –411 (1967).

of the act provides that he sign an arrest warrant which orders that the fugitive be delivered to the demanding state for prosecution. *Id.* at § 7.

■ Once the governor has granted extradition, an accused's sole avenue for relief from extradition is through a writ of habeas corpus. Thus, the purpose of the writ is not to inquire into the viability of the prosecution or confinement in the demanding state, but rather is solely to test the legality of the extradition proceedings. *See Lott v. State,* 864 S.W.2d 152, 153 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd as untimely filed).

■ The Texas court may only determine (1) whether the documents are valid on their faces; (2) whether Puerto Rico has charged Lebron with a crime; (3) whether Lebron is the person named in the request; and (4) whether Lebron is a fugitive. *See Michigan v. Doran,* 439 U.S. at 289, 99 S.Ct. at 535, 58 L.Ed.2d at 527. A prima facie case for extradition is established by introduction into evidence of the Governor's Warrant, regular on its face. But such prima facie case may be defeated by the supporting documents. *Ex parte Mason,* 656 S.W.2d 470, 471 (Tex.Crim.App.1983).

The demand for extradition must be accompanied by one of the specified types of charging instruments to show that the person "sought was charged in the regular course of judicial proceedings." *Ex parte Morales,* 810 S.W.2d 470, 473 (Tex.App.—Amarillo 1991, no pet.). The charging instrument must be a copy of one of the following: (1) an indictment; (2) an information supported by affidavit; (3) an affidavit before a magistrate and a warrant issued thereupon; or (4) a judgment of conviction or of a sentence imposed in execution of the conviction. TEX.CODE CRIM. PROC. ANN. art. 51.13, § 3.

### Legal Sufficiency of the Charging Instruments & Warrants

State's Exhibit 1 contains the charging instruments and resulting warrants in Spanish and English versions. *Denuncia* is translated as "Complaint." Lebron argues that the complaint is not supported by a proper affidavit as required by statute. There is only "subscribed and sworn to" language which is merely an acknowledgment.

■ In the case before us there is neither an indictment returned by a grand jury nor a judgment. The issue of legal sufficiency, therefore, turns on whether the two *denuncias* are supported by affidavit. Lebron argues that the two "complaints" were merely sworn to before a "secretary" on the line designated "Name and Signature of Judge or Clerk" and warrants issued thereon.

The State responds that the necessary affidavit is supplied by "a sworn averment, before a magistrate, that the appellant conspired to distribute marijuana; it also contains a finding of probable cause; it is accompanied by an arrest warrant, as a result it is sufficient to meet the requirements of Art. 51.13 § 3." The English versions are not careful transfers of all the same information, in that some information checked off on the Spanish original is blank on the translation.

We find that the supporting documentation, taken together, is legally sufficient for purposes of this extradition proceeding. The sworn statement of Felix Fumero Pugliessi, the acting district attorney for the requesting court, further supports our conclusion that appellant is the person sought to answer for violations of Puerto Rican law. Appellant's point of error is overruled. The order denying habeas corpus relief is affirmed.