**Byron de la BECKWITH, Appellant,**

v.

**H.Q. EVATT, Sheriff of Hamilton County, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 3, 1991.

Permission to Appeal Denied by Supreme Court Sept. 30, 1991.

Russell J. Bean, Chattanooga, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, and Rodney C. Strong, Asst. Dist. Atty., Chattanooga, for the State.

## OPINION

WADE, Judge.

The petitioner, Byron de la Beckwith, appeals from the trial court's denial of a writ of habeas corpus. The issue presented for review is whether the writ should have been granted, overriding the governor's order of extradition.

The petitioner asserts that (1) he is not a fugitive; (2) the extradition documents are facially invalid; (3) he should have been granted an evidentiary hearing; (4) the rule of law placing the burden upon the petitioner to establish his absence from the demanding state is unconstitutional; (5) the rule of law requiring the petitioner to establish that he is not a fugitive from justice is unconstitutional; and (6) he was unconstitutionally denied bail pending this appeal.

We find no merit to the petitioner's claims and hold that the writ of habeas corpus was properly denied.

On June 12, 1963, the petitioner was indicted in Hinds County, Mississippi, for the murder of Medgar Evers. Thereafter, there were two mistrials. More than twenty years elapsed before, on December 17, 1990, a capias was issued for the petitioner. On the next day the petitioner was arrested in this state as a fugitive; he made bail in the sum of $15,000.00. The request for

interstate rendition by the Mississippi governor followed on December 19th of last year.

Upon review of the documentation forwarded by the State of Mississippi, the governor of this state issued his warrant on or about December 30, 1990. The governor's warrant, attested to by the secretary of state, provided that the petitioner was a fugitive; was sought by the State of Mississippi; and was to be arrested and delivered to the Mississippi agent authorized to take him into custody.

## I

A person who commits a crime in one state, leaves, and is found in another, is a "fugitive from justice." *Appleyard v. Massachusetts*, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161 (1906). "Interstate rendition" is the right of one state to demand from the asylum state (the state to which the fugitive has fled) the surrender of a fugitive from justice. *Black's Law Dictionary* 820 (6th Ed.1990). "Rendition" is the actual return of such an individual to the demanding state. "Interstate extradition" is the reclamation and surrender by the asylum state, according to the due legal proceedings, of a fugitive from justice. *Id.* The governor of Tennessee "may demand of the executive authority of any other state or territory, any fugitive from justice, or any other person charged with [a] crime in this state and may appoint an agent to demand and receive such person and return such person to this state." Tenn.Code Ann. § 40–9–121(a). Other states have the authority to make similar demands upon this state.[1] The United States Constitution authorizes the extradition of fugitives from justice:

> The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

> No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due.

U.S. Const. art. IV, § 2, cl. 2.

Extradition has also been addressed by federal statute. 18 U.S.C. § 3182. The procedures governing extradition are, however, a matter of state law. *Martin v. Sams*, 600 F.Supp. 71 (E.D.Tenn.1984).

The extradition process most usually begins with the issuance of an ordinary criminal warrant. When it is determined that the accused is not within the demanding state, the charge is properly documented and forwarded to the asylum state. The authorities in the asylum state will generally issue a warrant charging the accused with being a fugitive from the demanding state; this "fugitive warrant" is much the same as any other warrant for arrest. It is directed to any peace officer and commands the apprehension of the fugitive and his presentation before a court. If there is no waiver of extradition and if it appears after examination by the judge that the fugitive is in fact the person sought, the accused is committed to jail. A time is established within which the demanding state may make the arrest. Bail is, however, available.

Upon notification by the authorities in the asylum state that the accused refuses to waive extradition, the demanding state submits formal documents requesting the governor of this state to issue a requisi-

---

1. In 1951, Tennessee adopted the Uniform Criminal Extradition Act. All states but Mississippi, Louisiana, and South Carolina had implemented the act by 1989. Mississippi has not yet done so; their statutory provisions regarding extradition are found in Miss.Code Ann. § 99–21–1 to – 11 and 7–1–25. The uniform act, by comparison, is more detailed; the corresponding Mississippi law, for example, provides no hearing for the fugitive prior to extradition. That Mississippi has not adopted the uniform act is not, however, material to the resolution of this case.

tion and agent's commission. The requisition, of course, is the formal demand to the governor of the asylum state that the fugitive be surrendered. The requisition and commission are examined by the appropriate officials in the asylum state and, if approved, the governor determines whether to issue his warrant. There is no constitutional right to a hearing before the governor. The governor's warrant is also known as a rendition warrant or an extradition warrant. This causes the arrest and delivery of the fugitive, and, barring habeas corpus proceedings, gives the agents of the demanding state the authority to take the fugitive back. *Ballentine's Law Dictionary* 445 (3d Ed.1969); 31 Am.Jur.2d *Extradition* § 144 (1989).

In this instance, the petitioner has exercised his right to invoke the habeas corpus option as a means of challenging the legality of his detention in the asylum state. Prior to being delivered over to the demanding state pursuant to the governor's warrant, any fugitive must be taken before a judge of the court of record in the asylum state. That, of course, took place here. If habeas corpus proceedings are requested and instituted, the demanding state's agent may not remove the fugitive from the asylum state until the courts pass upon the legality of the issuance of the governor's warrant. The regularity of that document is the central question here.

## II

Before our consideration of the particular issues involved in this case, it is appropriate to consider the purposes of the extradition process. In *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978), former Chief Justice Burger commented as follows:

The Extradition Clause was intended *to enable each state to bring offenders to trial as swiftly as possible* in the state where the alleged offense was committed (citations omitted). The purpose of the Clause was *to preclude any state from becoming a sanctuary* for fugitives from justice of another state and thus "balkanize" the administration of crimi-

nal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause served important national objectives of a newly developing country striving *to foster national unity* (citations omitted). In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy. Interstate extradition was *intended to be a summary and mandatory executive proceeding* derived from the language of Art. IV, § 2, cl. 2, of the Constitution (citations omitted). The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.

*Id.*, 439 U.S. at 288, 99 S.Ct. at 534–535 (emphasis added).

In *Doran*, the role of the trial court in the asylum state was described as limited to the following considerations:

(1) whether the extradition documents are in order on their face;

(2) whether the petitioner has been charged with a crime in the demanding state;

(3) whether the petitioner is the person named in the request for the extradition; and

(4) whether the petitioner is a fugitive. *Id.*, 439 U.S. at 289, 99 S.Ct. at 535; *see California v. Superior Court of California*, 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987).

■ Generally, the answers to these questions are readily ascertainable. The hearing is limited to the verification of these pertinent facts. The asylum state is "bound to accept the demanding state's judicial determination since the proceedings of the demanding state are clothed with the traditional presumption of regularity." *Doran*, 439 U.S. at 290, 99 S.Ct. at 536. Plenary review in the asylum state is not permitted. *Id.* The procedure is sum-

mary. *Superior Court of California,* 482 U.S. at 407, 107 S.Ct. at 2438. Several opinions from our court have adopted the *Doran* rationale, e.g., *State ex rel. Jones v. Gann,* 584 S.W.2d 235 (Tenn.Crim.App. 1979).

### III

At the hearing in the trial court on this petitioner's request for a writ of habeas corpus, affidavits were submitted. All other representations were made through counsel. In essence, the petitioner claimed that he was not in the particular district in Mississippi at which the crime occurred; that the extradition process between the governors of the states of Mississippi and Tennessee had proceeded much too quickly; and that he was not a fugitive within the meaning of the law.

In support of the latter assertion, the petitioner's counsel represented that the charges in Mississippi had been voluntarily dismissed by the state in 1969; the petitioner had run for public office sometime subsequent to the second mistrial; and that he continued to live in Mississippi until 1983. He stated that his move to Tennessee was motivated by his marriage to a resident of this state. The petitioner has apparently returned to Mississippi on several occasions since in order to see members of his family. His counsel argued that a postponement of the hearing was appropriate so that he might subpoena witnesses who would establish the veracity of the allegations made in his petition for habeas corpus relief.

The district attorney general responded that the definition of fugitive was much broader than asserted by the petitioner and summarized the state's position as follows:

> So I think it is clear from all this that *there is no sufficient allegation in the petition to carry today or any factual allegation even if they are all taken [as] true,* which would be sufficient for the petition for habeas corpus to be sustained.... Any other issues with regards to due process, speedy trial, double jeopardy, all those issues are issues that are not within the bounds of being considered by this court. They are issues

that have to be considered in Mississippi ... (emphasis added).

The trial court, using the guidelines provided by *Doran,* held that (1) the documents were in order on their face (irrespective of the speed with which our governor's office had processed the documents); (2) the demanding state had charged the petitioner with the crime of murder (a certified copy of the indictment and the capias had been properly filed); (3) the petitioner was, in fact, the person named in the request for extradition; and (4) the petitioner was a fugitive.

The petitioner has never challenged that he is the person charged in the state of Mississippi. Each of the six issues raised by this appeal relate to the three remaining subjects of permissible judicial review.

### IV

■ We initially address whether the record, in view of the state's stipulation that the petitioner's affidavits, representations, and other assertions are accurate, establishes that the petitioner is a "fugitive from justice." We think that it does. *Appleyard* and its progeny give broad definition to the term "fugitive." In *Biddinger v. Commissioner of Police,* 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917), a fugitive was defined as one who, "after the date of the commission of [a] crime leaves the state—no matter for what purpose or with what motive...." 38 S.Ct. at 43. This petitioner, although his motive for leaving Mississippi was by all appearances not related to the possibility of further prosecution in that state, meets the legal definition.

■ Secondly, the extradition documents are facially valid. The fact that the process may have been expedited by some "secret agreement," as suggested by the petitioner, between state officials has absolutely no bearing on the issue. The state should act quickly upon a demand for extradition—the constitution envisions that. Consequently, the petitioner is not entitled to probe more deeply into any political motivation inspiring the issuance of the gover-

nor's warrant. *Jones*, 584 S.W.2d at 237. The document is prima facie evidence that the out-of-state charges were properly lodged. The petitioner's complaint that the proceeding was expedited after the issuance of the arrest warrant and the setting of bail on December 18, 1990, even if true, is of no significance; and that the governor may have signed the warrant on a Sunday is equally inconsequential.

■ Thirdly, the petitioner argues that the matter should be remanded for a more complete evidentiary hearing. We do not think that is necessary here. The petition, the affidavits, and the representations of counsel make up the entire record in this case. The sole issue of fact was whether the petitioner met the legal definition of a fugitive. Assuming the accuracy of all the petitioner's assertions, he comes within that definition. There is no requirement that the trial court afford the habeas corpus petitioner an evidentiary hearing when the facts alleged in the petition, even if true, would not serve as the basis for relief. *See State ex rel. Byrd v. Bomar*, 214 Tenn. 476, 381 S.W.2d 280, 282 (Tenn.1964); *Russell v. Willis*, 222 Tenn. 491, 437 S.W.2d 529, 531 (Tenn.1969). By its very nature, the extradition process is summary. Once the pertinent determinations are made, a more complete evidentiary hearing is not warranted. Further proceedings would not only delay the inevitable but frustrate an essential aim of the Extradition Clause—a speedy trial on the merits of the charges lodged.

■ The final three issues presented by this appeal concern whether the applicable extradition laws violate the petitioner's constitutional rights. They do not. The petitioner is entitled to habeas corpus relief if he can show beyond a reasonable doubt that he was not within the state of Mississippi at the time the crime was committed. While that burden of proof may be difficult, it is not unconstitutional. *State ex rel. Lingerfelt v. Gardner*, 591 S.W.2d 777 (Tenn.Crim.App.1979). That is the appropriate standard when the validity of the extradition is brought into question. *See*

*State ex rel. Sandford v. Cate*, 199 Tenn. 195, 285 S.W.2d 343 (1955). That the petitioner must also establish that he is not a fugitive from justice does not violate any constitutional safeguard. Similarly, there is no constitutional abridgement by the denial of bail after the issuance of the governor's warrant. *Mandina v. State*, 749 S.W.2d 472 (Tenn.Crim.App.1985). Our statutes authorize bail after the accused's arrest on the fugitive warrant, but not after the issuance of the governor's warrant. The Extradition Clause [2] requires the governor of the asylum state to return fugitives after a proper demand is made by the executive authority of the demanding state. The "enforcement of a forfeited bond [in the event the fugitive fled to another jurisdiction] would not meet [those] requirements." *Id.* at 474.

The extradition process is a preliminary matter, limited in both scope and effect, by which the criminally accused is transported to another state for trial. This habeas corpus proceeding is at the petitioner's behest—a means by which he lawfully contests the validity of possible rendition. If unsuccessful, the only consequence is that he must face criminal prosecution in the demanding state.

■ At trial, the petitioner will be cloaked with a presumption of innocence and afforded each and every right to which he may be entitled by both the Mississippi and the United States Constitutions. Our ruling does not preclude the petitioner from asserting in the state of Mississippi any of his constitutional rights, including those to a speedy trial, due process, and double jeopardy. Those substantive issues are not, however, appropriate concerns of the courts in the asylum states. 439 U.S. at 290, 99 S.Ct. at 536.

We find that no error was committed by the trial court. Accordingly, the judgment is affirmed.

BYERS, P.J., and BIRCH, J., concur.

■

---

2. U.S. Const. art. IV, § 2, cl. 2.