IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2018

**JIMMY HEARD v. RANDY LEE, WARDEN**

**Appeal from the Criminal Court for Johnson County**
**No. 2017-CR-154   Stacy L. Street, Judge**

_____

**No. E2018-00700-CCA-R3-HC**

_____

The Petitioner, Jimmy Heard, appeals the Johnson County Criminal Court's denial of his petition for a writ of habeas corpus, contesting his transfer from Tennessee to Kentucky for trial.  On appeal, he contends that the habeas corpus court was without jurisdiction to order his transfer because he was not served with an arrest warrant.  On appeal, we conclude that the habeas corpus court properly denied the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

T. Craig Smith, Johnson City, Tennessee, for the appellant, Jimmy Heard.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Petitioner is serving a twenty-nine-year sentence in the Tennessee Department of Correction (TDOC).  On November 22, 2017, the Commonwealth of Kentucky filed a request for temporary custody of the Petitioner pursuant to the Interstate Compact on Detainers so that the Petitioner could be tried on two counts of first degree robbery and two counts of kidnapping.  The Petitioner requested a pretransfer hearing and filed a petition for a writ of habeas corpus to contest the transfer.

The habeas corpus court appointed counsel and held a hearing. At the hearing, counsel for the Petitioner advised the court that an indictment and arrest warrant had been filed in Kentucky and that "it appears that the request for temporary custody was properly filed." However, counsel argued that the State still needed to prove that the "Jimmy Heard" sought by Kentucky was his client. Counsel also argued that a Tennessee arrest warrant needed to be filed and served on the Petitioner pursuant to the Uniform Criminal Extradition Act and that "we're not sure that the Court has the proper jurisdiction without that procedural safeguard actually having been complied with." The habeas corpus court found that the Petitioner submitted to the jurisdiction of the court by filing his habeas corpus petition. The court noted that it had received documentation from the Governor of Kentucky, which included the Petitioner's "fingerprint sheet" and TDOC inmate sheet showing his height, weight, hair color, race, date of birth, age, state identification number, and Social Security number. The court found that the "minimum safeguards" for the Petitioner's transfer had been met and ordered that the Petitioner be transferred to Kentucky to stand trial on the charges.

## II. Analysis

On appeal, the Petitioner contends that while this case falls under the purview of the Interstate Compact on Detainers, the United States Supreme Court's opinion in Cuyler v. Adams, 449 U.S. 433 (1981), required that he be served with an arrest warrant pursuant to the Uniform Criminal Extradition Act. He further contends that because he was not served with an arrest warrant before he was taken before the habeas corpus court, the court was without jurisdiction to order his transfer to Kentucky. The State argues that an arrest warrant was not required because the Commonwealth of Kentucky sought the Petitioner's extradition pursuant to the Interstate Compact on Detainers, not the Uniform Criminal Extradition Act. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees an accused the right to seek habeas corpus relief. See Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). However, "[s]uch relief is available only when it appears from the face of the judgment or the record of the proceedings that a trial court was without jurisdiction to sentence a defendant or that a defendant's sentence of imprisonment or other restraint has expired." Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000); see also Tenn. Code Ann. § 29-21-101. The determination of whether to grant habeas corpus relief is a question of law. Summers v. State, 212 S.W.3d 251, 255 (Tenn. 2007). As such, we will review the trial court's findings de novo without a presumption of correctness.

"To facilitate the important duties of transferring individuals into and out of this state for trial on criminal charges, and to bring uniformity to the procedures among the several states," Tennessee has adopted the Uniform Criminal Extradition Act and the

Interstate Compact on Detainers. State ex rel. Young v. Rose, 670 S.W.2d 238, 239 (Tenn. Crim. App. 1984); see Tenn. Code Ann. §§ 40-9-101 to -130; Tenn. Code Ann. §§ 40-31-101 to 108. Our supreme court has explained that "[t]he chief difference between the Extradition Act and the Compact on Detainers is that the Compact procedures result in only a temporary transfer to the receiving state." State ex rel. Young, 670 S.W.2d at 239. Moreover, the Compact "establishes uniform procedures whereby a state may resolve its charges against another jurisdiction's prisoner." Dillon v. State, 844 S.W.2d 139, 141 (Tenn. 1992). "On the other hand, the Extradition Act addresses itself largely to fugitives who are not in custody." State ex rel. Young, 670 S.W.2d at 239 (citing Tenn. Code Ann. § 40-9-109).

Extradition pursuant to the Extradition Act has been explained as follows:

> The extradition process generally begins when the fugitive is arrested in the asylum state as a result of criminal charges in the demanding state. [de la Beckwith v. Evatt, 819 S.W.2d 453, 455 (Tenn. Crim. App. 1991)]; see Tenn. Code Ann. §§ 40-9-103 and [40-9-104]. If the fugitive does not waive extradition, the extradition process continues and the fugitive is taken before a magistrate, where the fugitive is either committed to jail or admitted to bail. Tenn. Code Ann. §§ 40-9-105, -106; de la Beckwith, 819 S.W.2d at 455. Then the magistrate establishes a time in which the demanding state may arrest the fugitive. Tenn. Code Ann. §§ 40-9-106, - 108. "Upon notification by the authorities in the asylum state that the accused refuses to waive extradition, the demanding state submits formal documents requesting the governor of this state to issue a requisition [warrant] and agent's commission." de la Beckwith, 819 S.W.2d at 455-56; Tenn. Code Ann. §§ 40-9-110, 112. If the demanding state's request is approved, the governor issues his rendition warrant, which authorizes the arrest of the fugitive and the delivery of the fugitive to the agents of the demanding state. Tenn. Code Ann. §§ 40-9-116, -118. When the fugitive is arrested on the governor's rendition warrant, the fugitive has a right to challenge the extradition in a habeas corpus proceeding. Tenn. Code Ann. § 40-9-119.

Tenn. Op. Atty. Gen. No. 04-117, at *1 (July 20, 2004). The fugitive also has a right to counsel and a right to a pretransfer hearing. Tenn. Code Ann. § 40-9-119.

In Cuyler, 449 U.S. at 449, the United States Supreme Court held that prisoners transferred to another state pursuant to Article IV(a) of the Interstate Agreement on Detainers[1] "are not required to forfeit any pre-existing rights they may have under state or federal law." Thus, because the Extradition Act explicitly grants a prisoner the right to counsel, the right to a hearing, and the right to apply for a writ of habeas corpus to challenge a transfer, those rights are preserved under the Agreement on Detainers even though they are not mentioned in the Agreement. See id. The court's reasoning was based on Article IV(d) of the Agreement, which provides as follows:

> "Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or ordered such delivery."

Id. at 445; see Tenn. Code Ann. § 40-30-101, Art. IV(d). The court noted that Article IV(d) of the Agreement specifically withheld one ground for opposing a transfer from the prisoner: that the governor of the sending State did not affirmatively approve the transfer. Id. at 446.

In State ex rel. Young, 670 S.W.2d at 239, the petitioners, relying on Cuyler, argued that the requirement for the Tennessee Governor personally to review requests for custody under the Extradition Act also applied to transfers under the Interstate Compact on Detainers. However, our supreme court disagreed, stating, "The clear intent of the Interstate Compact on Detainers is that the administrator be empowered to act on behalf of the State of Tennessee in all matters relating to the Compact and to withhold from the prisoners the right to personal review by the Governor." State ex rel. Young, 670 S.W.2d at 240. The court further stated that "[t]o overlay the Interstate Compact on Detainers with every 'minor procedural feature' of the Extradition Act would emasculate the Interstate Compact on Detainers and render it a nullity." Id.

In the instant case, the Petitioner contends that Cuyler required that he be served with a fugitive warrant pursuant to Tennessee Code Annotated section 40-9-103. The State argues that Cuyler did not "superimpose every technical requirement of the Uniform Criminal Extradition Act, such as the fugitive warrant provision, onto the Interstate Agreement on Detainers" and that the fugitive warrant provision does not apply in this case because the Petitioner was subject to transfer pursuant to the Interstate

---

[1] The Interstate Agreement on Detainers is the federal counterpart to the Interstate Compact on Detainers.

- 4 -

Agreement on Detainers.  We agree with the State.  "The sole purpose of a 'fugitive warrant' is to authorize both the arrest and/or continued temporary detention of a fugitive for a sufficient period of time to allow the obtaining of a 'governor's rendition warrant.'" W. Mark Ward, <u>Tennessee Criminal Trial Practice</u> § 2:22 (2018-19 ed.).  Here, there was no need to arrest and temporarily detain the Petitioner, who was already in custody and serving a significant prison sentence.  Therefore, because the Petitioner is a prisoner and subject to temporary transfer to Kentucky pursuant to the Interstate Compact on Detainers, Tennessee Code Annotated section 40-9-103 does not apply.  Accordingly, we conclude that the trial court did not err by denying the Petitioner's petition for a writ of habeas corpus.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the habeas corpus court's denial of the petition.

_____
NORMA MCGEE OGLE, JUDGE